WARREN & DALTON, to use of Warren, Plaintiffs in Error, *vs.* JULIAN H. LUSK, Defendant in Error.

1. In the absence of the knowledge of what the law of a sister state is, on questions of common law, our courts presume that the law of such state corresponds with our own.
2. Under the act of Congress of May 26th, 1790, in a suit upon a judgment of another state, whose laws, as to the effect of judgments, correspond with our own, when it appears from the face of the record that the defendant appeared by his attorney, evidence to show that the attorney had no authority to appear, is not admissible.

*Error to St. Louis Court of Common Pleas.*

*J. C. Richardson,* for plaintiffs in error.

I. Judgments of sister states have the same force and effect in all the other states of the Union, that they have in the state where rendered. 1 Greenleaf Ev., section 504. 1 Kent, 260. *Mills* v. *Duryee,* 7 Cranch, 481.

II. The judgment or record imports absolute verity, and cannot be contradicted; it is conclusive upon both parties. Appearance by attorney cannot be contradicted. *Lindell* v. *Bank of Missouri,* 4 Mo. 228. *Weber* v. *Schmeisser,* 7 Mo. 600. *Vaughn* v. *Reed,* 15 Mo. 137. 1 Binney, 469, 214. *Field* v. *Gibbs,* 1 Peters C. C. 158. *Town of St. Albans* v. *Bush,* 4 Vt. 310, 68, (in point)—afterwards recognized by the same court in 17 Vt. 310, 532. *Rust* v. *Frothingham,* Breese, 260. *Lincoln* v. *Power,* 2 McLean, 483, (in which Judge McLean expressly dissents from *Starbuck* v. *Murray,* 5 Wend. 148.) *Westervilt* v. *Lewis & Looker,* 2 McLain, 515. *Halbert* v. *Montgomery's Adm'r.* 5 Dana, 16, (directly in point.) *Roberts* v. *Caldwell,* 5 Dana, 512. *Jones* v. *Hunter,* 4 Howard (Miss.) 342. *Miller* v. *Ewing,* 8 Smedes & M. 428, in which Judge Sharkey reviews *Hall* v. *Williams,* 6 Pickering, and *Starbuck* v. *Murray,* 5 Wend. 148, (directly in point.) *Bright* v. *Ross,* 11 Smedes & M. 300. *Munikuyson* v. *Dorsett,* 2 Harris & Gill, 377. *Denton* v. *Noyes,* 6 John. 297.

In Massachusetts it is held, that the authority to an attorney to appear in the courts of that state, cannot be contra-

dicted. *Smith* v. *Bowditch*, 7 Pick. 137. So, also, in New York, the record of a domestic judgment, showing an appearance by attorney, cannot be contradicted, 2 Hill 66. There can be no propriety, then, in discriminating against the judgments of a sister state, if the Supreme Court of the United States is to be followed in the declaration that the judgment of one of the states is of the same dignity in every other state, as in the one where it was rendered. 7 Cr. 481.

The New York and Massachusetts courts, and others under their lead, have held, that the judgments of other states were on the same footing as foreign judgments; that they were only *prima facie* evidence in favor of the party in whose favor they were rendered, and could be impeached on any ground that would have been available in the original suit. But, under the authority of the Supreme Court of the United States, it is submitted, that no defence can be made to a suit on a judgment of a sister state, which could not be made had the suit been brought in the state in which the judgment was rendered. *Mills* v. *Duryee*, and *Hampton* v. *McConnell*, 3 Wheat. 204.

The record does not derive its virtue from the fact of notice to the parties, but, in consequence of its being the judgment of a court of competent jurisdiction; and if the record can be assailed because there was no authority to the attorney to appear, with equal propriety the sheriff's return can be disputed; or any other fact which it will be presumed the court passed upon before the rendition of the judgment.

It is in proof, that as early as 1842, the defendant had knowledge of the decree against him, and if there was any irregularity in the proceeding, it was his duty to have sought relief by proper steps in the courts of Illinois. The plaintiffs had every reason to believe that the decree was final and conclusive. They took no steps to save their original demand from the operation of the statute of limitations, and the defendant ought not to be encouraged into the trap he set for them. He knew of the decree and made no objection to it;

had no visible property out of which the decree could be enforced—but allows the decree to sleep in dangerous peace, and when the statute of limitation has barred an action on the original demand, and the plaintiffs attempt to enforce the decree, because they discover a hope to make it, the defendant is heard for the first time to say that the decree *is* a nullity, and if he succeeds in this court he may laugh at the plaintiffs if they venture upon the experiment, in the face of the statute of limitations, of bringing a suit upon the original demand.

III. The legitimate mode for relief against the unauthorized appearance by attorney, is, by a proper proceeding in the court which rendered the judgment, if the attorney is irresponsible. Peters C. C. 158. 2 McLain, 514. 2 Yeats (Pa.) 547. 6 Johnson, 297.

IV. But if the attorney is responsible, the defendant must look to him. 2 Breese, 260. 5 Dana, 16. 7 Pick, 138. 2 Harris & Gill, 378. 6 John. 34 and 297.

*T. Polk*, for defendant in error.

I. The record of the Illinois court, given in evidence by plaintiffs, showing that McDougal & McConnell filed a demurrer to the bill, in the name of both of the defendants, is not conclusive proof that Julian H. Lusk, the defendant in this case, appeared to the suit. It is only *prima facie* evidence and may be disproved. 1 T. R. 62. 6 Leigh, 570. 3 A. K. Marshall, 41. 4 Day's Conn. R. 380. *Aldrich* v. *Kinney*, 9 Mass. R. 462. *Bissell* v. *Briggs*, 6 Pick. 232. *Hall* v. *Williams*, 5 Wend. 148. *Starbuck* v. *Murray*, 5 Wend. 161. *Holbrook et al.* v. *Murray et al.* 6 Wend. 447. *Shumway* v. *Stillman*, 1 Ohio (Ham.) Rep. 124. *Spencer* v. *Brockway*, 6 Howard, 164. *Shelton* v. *Tiffin*.

To make a judgment binding on a party, he must either have been served with process or appeared to the action.

*J. A. Kasson*, for the same, contended, that with the single exception of proceedings *in rem*, a judgment cannot be valid, except when the defendant has had a legal opportunity to be heard, by means or notice served within the jurisdiction

from which it issues, or by a voluntary appearance. The statute of 1790 does not affect judgments of other states, rendered without notice or appearance of the defendant. *Thurber* v. *Blackbourne*, 1 N. H. Rep. 242. 11 N. H. Rep. 304. *Bissell* v. *Briggs*, 9 Mass. R. 462. *Hall* v. *Williams*, 6 Pick. 232. *Gleason* v. *Dodd*, 4 Met. 338. *Holbrook* v. *Murray*, 5 Wend. 161. *Smith* v. *Ross & Strong*, 7 Mo. 465. *Moore* v. *Farrow*, 3 A. K. Marsh. 44. 5 Mason, 35, 42-3. *Sutton* v. *Hayes*, 3 Mo. 84.

A party is at liberty to put in issue the notice or appearance upon which the validity of the judgment depends, even where the record recites an appearance ; unless it was a fact adjudicated upon, so as properly to partake of the nature of a judgment upon an issue. *Gleason* v. *Dodd*, 4 Met. 338. Story's Conflict of Laws, sections 608, 609. *Whittier* v. *Wendell*, 7 N. H. 259. *Shumway* v. *Stillman*, 6 Wend. *Noyes* v. *Butler*, 6 Barb. Sup. Ct. Rep. 615. *People* v. ——, 5 Hill, R. 168. *Aldrich* v. *Kinney*, 4 Conn. 380. *Kelly* v. *Hooper*, 3 Yerg. 395. *Pritchartt* v. *Clark*, 3 Harring. 517. *Wilson* v. *Mt. Pleasant Bank*, 6 Leigh, 570. —— v. *Porter*, 3 Ham. O. Rep. 520. *Holt* v. *Holloway*, 2 Blackf. 108. *Shelton* v. *Tiffany*, 6 How. U. S. Rep. 186.

The provision of the U. S. constitution is nearly copied from the old articles of confederation. (See Art. IV.) It was proposed under those articles to make these judgments conclusive, but the motion was voted down. (See 1st secret journal of Congress, 386.)

*Glover & Campbell*, in reply.

As there is almost an indefinite amount of authority on both sides of this question, it is better to re-examine the subject on principle.

It is a maxim of the common law, that a record imports absolute verity, as to all parties to it, and therefore cannot be contradicted. This is not grounded upon any supposed infallibility of the ministers of justice, but on another maxim

deduced from common experience : *Expedit reipublicæ ut sit finis litium.*

The defendant contends that he cannot be estopped by the act of an attorney who was not authorized to act for him.

But, the record says, it was "*his* attorney," and he cannot contradict it.

Why should a party not be concluded by the act of an attorney ? An attorney, like the judge, clerk, or sheriff, is an officer of the court, acting under oath.

All the analogies of the law are against the position taken by the defendant, that he cannot be bound by the act of an officer of the court. When the sheriff returns a writ executed, though he has not executed it, the defendant is not allowed to put the truth of his return in issue.

If the clerk enters of record, that the defendant appeared, it admits of no denial. The acts of the judge, as entered of record, are to be taken as stated. Why should the acts of attorneys of the court be an exception ?

Those cases which hold that, if the record says " the defendant appeared," that is conclusive ; but, if it says, " defendant appeared by attorney," that is open to controversy, take a distinction not founded in reason. It assumes that the clerk must know the personal identity of all defendants, and that the case of a false personation is impossible.

The doctrine contended for, on the other side, is a trap for the unwary. If the judgment is voidable, it can only be avoided at the election of the defendant. The right to avoid is not reciprocal. The plaintiff, then, having been so unfortunate as to get such a judgment, has no recourse but to sue upon it, as he has done in this case. Had he sued on the original account, the judgment being voidable only, at the will of the defendant, might have been used as a defence. When he sues on the record, the defendant exercises his election and avoids it. In the meantime, the statute of limitations has barred the plaintiff's demand.

Again, suppose this unauthorized act of the attorney had

resulted in the defeat of the plaintiff's suit; the record being only voidable at the pleasure of the defendant, it would have concluded the plaintiff; but the result being unfavorable, the defendant avoids it. In other words, he stands by, sees the result of proceedings in his name, and then affirms or rejects, as motives of interest may dictate.

But, the plaintiff's case is still harder. Suppose Col. Warren had attempted to protect himself against all these consequences. Suppose he had required evidence, that the attorneys had the power to enter this very appearance. The court would have said: the presumption is, the attorneys have the power they exercise. 4 Shep. 224. 1 Scam. 291, 46. 3 Har. (Del.) 15. 4 Hump. 480. 9 Ham. 117. 1 Pike 99. 9 Ala. 557. 3 Mon. 194. 12 N. H. 489. 16 Maine, 228.

But if you will prove to the court affirmatively, that they have no power, or are abusing their power, then they will be required to show their authority. In such case, however, the statement of the attorney, on oath, will be sufficient. 7 Hals. 148. 15 John. 246. The plaintiff is forced to abandon this proceeding and to act upon a legal presumption arising out of the facts that the defendant has appeared.

Now, we contend that on plain principles of justice, whenever the law raises a presumption from considerations of public policy, out of an apparent state of case, and a party taking that state of case as true, *acts upon it*, the law supports him in it.

The question of jurisdiction of the person, is one on which the court passes, *and is obliged to pass*.

The doctrine we contend for, is the doctrine of our Missouri courts, and it is the true doctrine. 4 Mo. Rep. 228. 7 ib. 601. 10 Mo. Rep. 337. It may work some hardship, but will do more good.

It does not appear to us, that the great majority of cases ruled on this subject, have been decided in view of the evident meaning of the constitution of the United States. Sufficient attention has not been paid to the fact, that judgments of sis-

ter states, are to have the effect in another state precisely which they had where rendered. Now, no relief could be had in Illinois against this judgment, except by motion to set it aside in the court that rendered it. 3 Gilman, 634. This accords with the opinion of this court. *Wood & Oliver* v. *Pemberton*, 10 Mo. Rep. 385. This might have been effected by continuing the case in the Common Pleas, till a motion could be heard in Illinois to set aside the judgment. This sensible doctrine has been boldly asserted in 2 Hill, 646. 17 Vermont, 309.

It is amusing and humiliating to see how strangely and wildly courts have ruled on this subject.

In New York, after vascillating to all points of the compass, it was held, 17 Wend. 484, a judgment was conclusive though there was neither process, record, nor appearance shown by the record.

The legal presumption is, that by the law of Illinois, this judgment is a legal and conclusive judgment. The defendant should have shown by the laws of Illinois, it was obnoxious to some objection. This law ought to have been produced, read to the jury, and made part of the bill of exceptions. It was not done. The only course, therefore, that remains, is to examine it by our own views of the common law, as expounded by our courts. These declare it conclusive.

SCOTT, Judge, delivered the opinion of the court.

This was an action of debt, on a decision rendered in the State of Illinois, against Julian H. Lusk & Edward Lusk, in favor of the plaintiffs in error. The plea was a formal one, without any meaning, under which, by the statute then in force, all defences to actions were required to be made. On the issue in the cause there was a verdict for the defendant, and after judgment the plaintiffs sued out their writ of error.

It appears from the record, on which this suit was instituted, that neither Julian H. Lusk, the defendant in this action, nor Edward Lusk, were served with the original process in the cause. The record states, that the defendants filed their

demurrer.   The language of the demurrer is such, as would be employed by a plurality of persons, and is signed by the solicitors of the demurrants.   At a subsequent day, the record recites, that " this day came the parties, by their solicitors, the defendants having filed their demurrer to the complainants' bill, &c."   The demurrer was overruled, and leave given to the complainants to amend their bill; and Julian H. Lusk failing further to answer, the bill was taken *pro confesso,* as to him.   Edward Lusk, on leave, withdrew his demurrer and filed a plea in his own defence.   He finally got rid of the proceeding, and the decree against Julian H. Lusk was confirmed, and he was adjudged to pay the sum of $3,238.   The defence of Julian H. Lusk to this action is, that he was never served with process in the original suit; that he never appeared thereto in person, or by any authorized solicitor, and that he was not, at the time of the bringing of this suit, or at any time during its pendency, a resident of the state of Illinois.   These facts being in evidence under the pleadings in the cause, a verdict was rendered for the defendant.

The only question in this case is, whether the defence offered by the defendant was admissible, in an action on a judgment or decree of a sister state, rendered under the circumstances detailed in the foregoing statement.   When the mind, in considering a question, is relieved from the anxiety of taking a view of it which may be different from that entertained by all others, and is conscious that whatever course it may pursue, it will have the weight of respectable opinions in its support in forming a conclusion, under such circumstances it is the part of wisdom to ascend to first principles, and take that view which, while it avoids any encroachment on the established principles of law, is reconcilable to the dictates of sound policy. *Melius est petere fontem quam sectari rivulos.*   When the nature of the human mind is considered, and its unwillingness to depart from ways of thinking to which it has been long accustomed, it is not remarkable that some repugnance should have been entertained by the old lawyers of the day, to the act

of Congress of 26th May, 1790, which, after presenting the mode by which judicial records shall be authenticated, declares, that the said record and judicial proceedings shall have such faith and credit given to them in every state within the United States, as they have by law and usage in the courts of the state from which such records are or shall be taken. Cotempora-neously with the formation of the federal constitution, the question of the effect of foreign judgments was discussed in England and continental Europe, and different opinions in re-lation to it were entertained by eminent jurists. The opinion most favorable to their effect did not make them more than *prima facie* evidence of the justice of the demand which they evidenced. The legal mind had not progressed beyond this point. The framers of our constitution, having this state of things before their eyes, and reflecting on the intimate relations which would be created among the states of this confederacy, by the form of government about which they were deliberating, determined, that "full faith and credit should be given in each state to the public acts, records and judicial proceedings of every other state, and that congress should, by general laws, prescribe the manner in which said acts, records and proceed-ings shall be proved, and the effect thereof." It was in pursu-ance to this provision of the constitution, that the act above recited was passed ; and the constitutional competency of con-gréss to enact it has never been questioned, though some con-trariety of opinion is entertained, as to the meaning of the words, "and the effect thereof," whether they related to the effect of the record or of the proof. But this is deemed un-important. Now, it would seem, that whenever an action is brought on the judgment of a sister state, the first question that would present itself to the mind of him who was medita-ting a defence to it, would be, what plea could be set up against that judgment, if this suit had been brought in the state in which the judgment was rendered?

1. In the record of the case before us, the laws of the state of Illinois, giving effect to the judgment of her courts of gen-

eral jurisdiction, do not appear. We know that this is a matter regulated by the course of the common law, and in the absence of the knowledge of what the law of a sister state is, on questions of common law, it is an established principle of American jurisprudence, that our courts will presume that the law of such state, on such questions, corresponds with our own. *Holmes* v. *Broughton*, 10 Wen. 75. *Legg* v. *Legg*, 8 Mass. 99.

2. Now, if this were a domestic judgment, and suit was brought upon it, would it admit of question, that this defence would be inadmissible? In the case of *Hampton* v. *M:Connell*, 3 Wheat. 234, Judge Marshall says: " The judgment of a state court should have the same credit, validity and effect in every other court of the United States, which it had in the state courts where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, *and none others*, could be pleaded in any court in the United States. " In the case of *Landes* v. *Perkins*, 12 Mo. Rep., this court maintained, that a judgment could not be impeached in a collateral proceeding, by showing a want of jurisdiction of the person of the defendant; and the same judgment coming up in a kindred case, in the Supreme Court of the United States, that court held the same doctrine, and decided that it could not be impeached collaterally, and expressed an entire concurrence with the views on this point entertained by this court. *Landes* v. *Brant*, 10 Howard 371. We are free to admit, that there are decisions of courts, the eminence of whose judges entitle them to the greatest respect, which maintain that while the judgment of a sister state is conclusive, on the merits of the subject of controversy, yet, the facts which give jurisdiction of the person of the defendant, may be put in issue, and if it is found that they do not exist, the proceeding will be invalidated. The different views entertained of this matter are perplexing. Some of the courts hold, that if the appearance is entered as being in person, the fact cannot be contradicted, but that the authority of the attorney may be disproved, when

the appearance is by attorney. Others reject this distinction, and admit proof of facts showing the want of jurisdiction over the person of the defendant, let the recitals be as they may; while there is not wanting a considerable weight of authority in support of the opinion, that when it appears from the face of the record that the defendant had notice of the proceedings, that fact could not be controverted, as a record imports absolute verity. To this opinion we incline, as being consonant to the established rules of law. In considering this matter, it is well enough to look somewhat to the rights and interests of plaintiffs, as well as defendants. If a judgment is obtained against a defendant in one state, and he afterwards removes to another and is sued on the original cause of action, he may, it seems, plead the former recovery in bar of the action. *Green* v. *Sarmiento*, Pet. C. C. R. 74. It is not perceived how one, who appears as plaintiff in such a record as that in the present case, would show its invalidity, if the defendant would hold him to it. The original cause of action being merged in the first judgment, if the plaintiff sues on it, he may be defeated by the defendant, using the judgment as conclusive against him; while if he sues on the judgment, the defendant may impeach its validity, by denying the existence of the facts which conferred jurisdiction. So there is no reciprocity in the thing. The plaintiff is bound by the record, and the defendant is bound or not, as it suits his purposes. If he is sued upon the original cause of action, the plaintiff is defeated by the production of the record; if upon the record, he is permitted to show its nullity, by controverting the facts which confer jurisdiction. The proceedings on a writ of error at common law, furnish no argument in favor of the notion, that the authority of an attorney to appear for a party to the record may be controverted. By the common law, the want of a warrant of attorney, which was an instrument under seal, might be assigned for error, as might the want of the original writ, declaration, or any other paper necessary to perfect the record. But that is a very different thing from dis-

puting the fact, that the attorney had authority to enter an appearance for a party. The want of a warrant of attorney is now cured by the statute of jeofails. No matter, tending to negative the appearance of an attorney, or of his authority to appear, could be assigned as error to obtain a reversal of the judgment. *Bradburn* v. *Taylor*, 1 Wil. 85. *Norris* v. *Fletcher*, Croke, Carr, 53. But where is this matter of disputing the verity of the record to end ? If the authority of the attorney may be denied, why not deny the identity of the defendant with the person appearing, for he may be personated ? So, the sheriff may be mistaken and summon another person for the defendant ; and he may, in effect, have no notice of the proceedings. Can any reason be given why one of these facts should be controverted and not the other ? There would seem to be no distinction between the cases. Terming one of the facts a recital, does not make a difference. Recitals are a part of the record. Story and Kent, in their commentaries on the constitution, say, that the truth of the facts, which give jurisdiction of the person of the defendant, may be denied, in order to destroy the effect of a record ; but they do not say that this can be done when the effect of it may be to impeach the verity of the record. If a judgment should be rendered against a party, and it should appear upon the face of the proceedings that he had no notice of them, their doctrine might come into play ; but we cannot overturn the solemn decision of the Supreme Court of the United States, whose province it is, under the constitution, to settle the question, for the opinion of any commentator, whatever respect may be entertained for his learning and abilities. Nor should consequences be entirely disregarded in settling this question. If a judgment in one state is the extinction of the original cause of action, when suit is brought on it in another, we may easily perceive the difficulties that will be interposed to the recovery of just demands, by permitting the verity of records to be impeached, now that the facilities for travelling have been so multiplied and space annihilated, as it were, by the improved modes of transportation,

making the states of the union occupy the same position to each other, as it respects distance, as was formerly occupied by the counties of the same state.

It sufficiently appears upon the face of the record, that the court had jurisdiction of the person of the defendant, and if suit had been brought on such a judgment rendered in our own courts, the fact of notice could not be controverted; so the laws of Illinois, being the same as ours with respect to the effect of judgments, in a suit on a record from that state, the truth of a fact appearing on the record, cannot be controverted. The defendant is not without redress. In the court in which this judgment was rendered, it may be set aside, if the facts are as alleged. This is the most equitable mode of disposing of this controversy. Such a motion is addressed to the discretion of the court, and in acting upon it, the parties may be laid under terms, which will subserve the ends of justice. He was a resident of Illinois and made the contract concerning real estate which has given rise to this controversy in that state, and we are not satisfied but that the ends of justice will be promoted by remitting him to the jurisdiction of the *lex loci rei sitæ.*

No question was made, as to the right of a party to maintain an action on a decree for the payment of money. It was not controverted. The other Judges concurring, the judgment will be reversed.