Marx v. Fore.

---

Moses Marx, Defendant in Error, *v.* Charles J. Fore, Plaintiff in Error.

1. *Judgments, foreign — Jurisdiction — Want of service — Defenses in suit on such judgment.* — In suit brought upon the record of a judgment rendered in a sister State, defendant may set up in his answer as a defense the fact that in the original suit no service was had upon him, and that the appearance entered on his behalf was fraudulent, notwithstanding that such defense contradicts the recitals contained in that record. Such matter is proper under the statute law of this State, authorizing equitable defenses. But defendant must couple with such statement allegations showing that he has a good defense on the merits, and so has been injured by such fraudulent appearance. Otherwise there would be no warrant for equitable interference.

| 51 | 69 |
| --- | --- |
| 100 | 268 |

| 51 | 69 |
| --- | --- |
| 52a | 254 |
| 52a | 571 |

| 51 | 69 |
| --- | --- |
| 54a | 150 |

| 51 | 69 |
| --- | --- |
| 131 | 279 |

| 51 | 69 |
| --- | --- |
| 72a | 28 |

| 51 | 69 |
| --- | --- |
| 146 | 515 |
| 150 | 652 |

| 51 | 69 |
| --- | --- |
| 81a | 663 |

| 51 | 69 |
| --- | --- |
| 95a | [1]181 |
| 97a | [2]694 |

Per ADAMS, Judge.

**2.** *Judgments import verity — May be set aside, when.*—Judgments of courts of record, whether domestic or foreign, may be impeached and declared void for fraud in actions brought to enforce them in this State. At law, where there is no apparent irregularity, judgments import absolute verity; but in equity they may be set aside when obtained by undue and fraudulent contrivances, in the absence of and without notice to the opposite parties.

Per WAGNER, Judge, dissenting.

**1.** *Judgments of sister States — Suit upon — Notice, denial of —Plea of fraud, etc.*—In suit on a judgment obtained in another State, where the record avers the service of notice, defendant will not be permitted by his answer to deny it. Nor will he be permitted to set up the defense that the judgment was obtained by fraud.

*Error to Cape Girardeau Court of Common Pleas.*

*J. B. Dennis,* for plaintiff in error.

Fraud charged in general terms is a good defense, and it is error to exclude proof of it (Edgell v. Seigerson, 20 Mo. 494), more especially where, as in the case at bar, a replication had been filed to this count. But the error mainly relied on in this case as a ground for reversal, is the refusal of the court to hear parol proof denying service of process, and of the authority of any one to enter an appearance for defendant in the suit in Mississippi. To his counsel, plaintiff in error earnestly insists that he "knew nothing whatever of any suit pending against him in Mississippi;" "that he was never served with process in this suit," and that "the return of the officer, and pretended appearance of some one for him, is a base fraud."

The act of Congress of May 26, 1790, chapter 11, provides that "the records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court in the United States, as they have by law or usage in the courts of the State from whence the said records are or shall be taken." And the question presented by this record is, are the recitals which a record contains conclusive of its jurisdiction, and may it be controverted by extrinsic evidence? The constitution says that Congress may prescribe the "effect" of records, etc., from other States. "The effect of records must in *its*

very nature apply to them as evidence, because no one will contend that an execution would issue on the record alone." At common law a domestic record imports absolute verity, but during the last century a very different rule prevailed as to foreign records, etc., under which rule, if a party recovered judgment in one State or country, he might be put to the risk and delay of trying the case over again in another country; and it was to remedy this evil that the clause above cited was ingrafted in our constitution.

In the case of Monroe v. Douglas, 4 Sandf. Ch. 126, 181, the court held that a foreign judgment was conclusive as a defense, but only affords a presumption when made the foundation of a suit. It is true that the English courts now hold that a foreign judgment rendered on due notice, and by a competent tribunal, is equally as conclusive, whether it was for plaintiff or defendant, but such was not the rule when this constitutional amendment was adopted. The constitution only had reference to such judgments as are valid, not to those which are void. "It did not mean to confer a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory." (Sto. Confl. Laws, 7th ed., 609 ; Sto. Com. Const., § 183 ; McElmoyle v. Cohen, 13 Pet. 312.) It is a well-settled rule that an *ex parte* judgment from another State is void in this State. (Gillet v. Camp, 23 Mo. 375 ; Winston v. Taylor, 28 Mo. 82 ; Latimer v. Union Pacific R.R. Co., 43 Mo. 105.)

In regard to the question at bar, there are but three cases directly in point in this State. In Wilson v. Jackson's Adm'r, 10 Mo. 329, this court held that a judgment of a sister State is *prima facie* evidence of the jurisdiction of the person, where the writs were returned " executed," although such return is informal. In Warren & Dalton v. Lusk, 16 Mo. 102, Judge Scott bases his decision on the case of Mills v. Duryee, 7 Cranch, 481, It is submitted that the case cited by his honor did not decide that point. (See opinion itself by Judge Story ; dissenting opinion by Justice Johnson ; Hare & Wallace Am. Lead. Cas. 620 ; Sto. Confl. Laws, 7th ed., § 609 *et seq.*) On the contrary, the case of Starbuck v. Murray, 5 Wend. 148, was cited and relied on as

an authoritative exposition of the law by the Supreme Court in the case of Harris v. Hardeman, 14 How. 336, 340. Same in Noyes v. Butler, 6 Barb. 613 ; Wilson v. Bank, etc., 6 Leigh, 570 ; Pollard v. Baldwin, 22 Iowa, 328. In Norwood v. Clarke, 24 Texas, 551, proof that the defendant was not served with process was in like manner held admissible, although the record set forth that service was effected. And the courts obviously inclined to this opinion in the cases of Rape, v. Heaton, 9 Wis. 328 ; Rogers v. Gwin, 21 Iowa, 58 ; Gleason v. Dodd, 4 Metc. 133. In the case of Barney v. White, 46 Mo. 137, this court seems to incline to the same opinion. The weight of authority sustains the affirmative of the proposition that " parol testimony may be admitted to deny jurisdiction." (Hare & Wallace's Am. Lead. Cas. 642, 646, citing Cait v. Haven, 30 Conn. 190, 198.) The reason assigned by Judge Marcy in the Starbuck-Murray case, as to why parol proof should be admitted, has never been refuted ; and if a contrary rule is to prevail in this case, it seems to me to be little less than a premium offered to fraud. It is submitted that if the views here advanced are sustained, and Marx cannot recover on his judgment for want of notice, it will not bar his right of recovery on the original contract. (Sto. Confl. Laws, 7th ed., 609 b.)

*G. H. Green* and *Louis Houck*, for defendant in error.

I. The record of the Copiah Circuit Court shows an appearance of the defendant by attorney. The defendant cannot contradict that record by parol as to that point, in a suit upon the judgment in this State. Where the record of a judgment recorded in another State shows that the defendant voluntarily entered his appearance by attorney, he will not be permitted, in a suit upon the judgment, to disprove the authority of the attorney. (Warren v. Lusk, 16 Mo. 102 ; Baker v. Stonebreaker, 34 Mo. 172.)

II. The matter stricken out and the evidence excluded were properly stricken out and excluded. It was an attempt to inquire into the merits of the case. Whatever constitutes a defense to the action ought to have been pleaded in the Copiah Circuit Court. (Destrahan v. Scudder, 11 Mo. 484 ; Grover v. Grover, 30 Mo.

400 ; Sto. Confl. Laws, § 600 ; Sto. Const., § 183 ; Mills v. Duryee, 7 Cranch, 481, where it is expressly held that the merits of the judgment cannot be investigated. (Harrington v. Cornel, 3 Wheat. 234 ; Christmas v. Russell, 5 Wall. 290 ; Sweet v. Barckley, 53 Me. 346 ; McFarland v. White, 13 La. Ann. 394 ; Milne v. Van Buskirk, 9 Iowa, 558 ; Benton v. Burgot, 10 Serg. & R. 240.)

BLISS, Judge, delivered the opinion of the court.

This was a suit upon the record of a judgment rendered in Mississippi, and though many questions are raised, I will consider but one. For one of his defenses the defendant set forth the alleged indebtedness for which the judgment was rendered, charged that it was paid off and discharged before the suit was instituted ; that he had left Mississippi and was not a resident of that State when it was instituted ; that no service of process was had upon him ; that he did not know of the suit and never authorized any one to appear to it for him. The Mississippi record shows appearance by attorney and plea, and that part of the answer setting forth the above facts was, on motion of plaintiff, stricken out. The present record shows that it was not stricken out for defect or informality, but upon the ground that the judgment could not be thus impeached.

Counsel have discussed the vexed question whether this Mississippi record imported absolute verity, so that the recital of service and defendant's appearance could not be contradicted, and have cited authorities upon both sides. The affirmative of this question was taken by this court in Warren v. Lusk, 16 Mo. 102, and if the language of Judge Scott is to be taken literally, a judgment, though rendered without appearance in fact or notice to defendant, must be paid by him, or he must go to the State where it was rendered—perhaps to Oregon or Maine—and move to set it aside.

But we are not to understand the language of the court as shutting off equitable defenses. That question was not before it, and when the judge says that recitals import absolute verity, and that defendant is estopped from disputing them, he only means

that the judgment is to have the force of a domestic one, which must be attacked by a direct proceeding.

That a judgment may be impeached for fraud or mistake cannot be questioned. (Rogers v. Gwinn, 21 Iowa, 58 ; Pierce v. Olney, 20 Conn. 544 ; Christmas v. Russell, 5 Wall. 270.) If it be a domestic one, a motion, if made in season, will reach it, and is a proper remedy. (Downing v. Still, 43 Mo. 309.) It may also be set aside by error or bill. "Courts are in the constant habit of relieving parties upon equitable terms from judgments rendered against them in consequence of the fraudulent acts of the successful party or his attorney" (Rogers v. Gwinn, *supra*) ; and what greater fraud than falsely to enter an appearance in order to obtain jurisdiction over a defendant?

The only question, then, is, whether the judgment may be attacked, and the want of jurisdiction and the fraudulent simulated appearance be shown by answer, or whether the party, who is not supposed to know of its existence until sued upon it, shall be compelled to go to the State where it was rendered, and there proceed directly to overthrow it. I infer that the latter will not be required, from several considerations. First, the suit is upon a judgment. If obtained by fraud and without jurisdiction, it is no judgment — is void, and will be so declared if the fact is made to appear ; the defense goes to its very existence. Second, citizens are not driven to foreign States to protect their rights. If they have a legal right, or are being subjected to a wrong, they may look for protection to the tribunal having jurisdiction over them and the subject-matter, if the opposite party has placed himself within this jurisdiction. Third, it would, in many cases, be oppression or an absolute denial of justice. The inconvenience and expense of going to a distant State, of there employing counsel and litigating the matter, would often be so great that the suffering party would rather pay a pretty large judgment, although fraudulently obtained, than to undertake to set it aside. And besides, he might not succeed in his direct proceeding abroad until long after it had been collected at home. Fourth, the statute expressly authorizes equitable defenses, and provides for affirmative relief, where, under the old system, a bill was necessary under

which a suit in chancery was instituted. Now, if the subject-matter of the bill shows a defense to a pending suit, it may be set out as a defense by way of answer.

The error of the court below was in striking out a defense of this character. It did not distinguish between the old plea in bar and the setting forth of facts which in equity should destroy the judgment. We may adhere to Warren v. Lusk, and still permit a party to allege and show that the judgment was obtained by such fraud as went to the jurisdiction of the court, and to do this we will not compel him to go to the *situs* of a foreign judgment, but permit him to make it as a defense whenever and wherever such judgment is sought to be enforced. I say nothing of any other fraud except that which would go to the jurisdiction. If that was obtained, the party may be required to attack the judgment where rendered. But in this view it would not be sufficient to simply set out the fraudulent appearance, but he must show that he was injured by it; for if he has no defense to the claim, there is no warrant for equitable interference. In the case at bar he has done both, and if the facts set forth in the answer which was stricken out are true, the plaintiff is not entitled to judgment.

I have said nothing to impugn the authority of Warren v. Lusk in a proper case. But if it is considered to warrant the action of the court below in the case at bar, it so far goes beyond the received interpretation of the constitutional provisions requiring credit to be given to the judgments of other States. The rule is that they are to be just as conclusive as domestic judgments, *with this exception,* that " they are open to inquiry as to the jurisdiction and notice to defendant" (Christmas v. Russell, 5 Hall, 305), and this inquiry can be made notwithstanding the recitals. (Harris v. Hardman, 14 How., U. S., 334, quoting and approving the emphatic language of Marcy, Justice, in Starbuck v. Murray, 5 Wend. 156; Kerr v. Kerr, 41 N. Y. 272; Rape v. Heaton, 9 Wis. 328; Pollard v. Baldwin, 22 Iowa, 328.)

The reasoning of Marcy in Starbuck v. Murray, as quoted and approved in Harris v. Hardman, is unanswerable. After citing many authorities he says: " This doctrine does not depend merely upon adjudged cases. It has a better foundation; it rests upon

Marx v. Fore.

a principle of natural justice. No man is to be condemned without the opportunity of making a defense, or to have his property taken from him by a judicial sentence without the privilege of showing if he can the claim against him to be unfounded.

"But it is contended that if the other matter may be pleaded by defendant, he is estopped from asserting anything against the allegation contained in the record. It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it. It appears to me that this proposition assumes the very fact to be established which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgments are void, and therefore that the supposed record is in truth no record. If the defendant did not have proper notice of and did not appear to the original action, all the State courts, with one exception, agree in opinion that the paper introduced as to him is no record; but if he cannot show, even against the pretended record, that fact, on the alleged ground of the uncontrovertible verity of the record, he is deprived of his defense by a process of reasoning that to my mind is little less than sophistry. The plaintiffs in effect declare to the defendant the paper declared on is a record because it says you appeared, and you appeared because the paper is a record."

Reliance is had, in favor of the doctrine of absolute verity, upon Mills v. Duryee, 7 Cranch, 418; but that case has not been generally followed, at least in the sense now sought to be given it. A party about to perpetrate a fraud by obtaining judgment against one without his knowledge, would of course see that the record showed an appearance, and to estop the latter from showing the record to be a nullity would offer a bounty to such frauds. Counsel rely upon Christmas v. Russell, 5 Wallace, but the question could not arise in that case, inasmuch as the party had appeared and made defense, and upon other questions the record was conclusive.

Judge Adams concurring, the judgment will be reversed and the cause remanded.

SEPARATE OPINION OF JUDGE ADAMS.

The general allegation that the judgment was fraudulently

obtained, taken in connection with the specific charges of the total want of notice and the fraudulent entry of the defendant's appearance by an attorney not appointed by him, together with the facts alleged in regard to payment, must be looked to as constituting a good equitable defense to this action. Without impugning the doctrine laid down by the Supreme Court of the United States in Mills v. Duryee, 7 Cranch, 481, and afterwards affirmed by this court in several cases, I maintain that judgments of courts of record, whether foreign or domestic, may be impeached and declared void for fraud in actions brought to enforce them in this State. It is the peculiar province of courts of equity to ferret out all questions of fraud, and to set aside all transactions founded in fraud, whether they be the acts of parties *in pais*, or the solemn adjudications of courts.

It would be strange, indeed, if no redress could be afforded by our own courts against foreign judgments, or judgments of sister States obtained by fraud and imposition, and brought here to be enforced. It may be conceded that at law, where there is no apparent irregularity, such judgments import absolute verity; but in equity they may be set aside when obtained by undue and fraudulent contrivances, in the absence of and without notice to the opposite parties. Our citizens cannot be driven to a foreign court to seek a remedy against such judgments, but may, whenever an action is brought here, set up this equitable defense as a complete bar.

The case of Christmas v. Russell, 5 Wall. 290, is not in conflict with these views. The court admits in that case that judgment obtained by fraud may be impeached in a court of chancery by a direct proceeding for that purpose. Here our code of practice allows parties to set up equitable defenses by way of answer, and they may do so, and thus impeach judgments upon which they are sued, without resorting to an independent action in the nature of a bill in chancery for that purpose.

For these reasons I concur in the opinion of Judge Bliss.

#### DISSENTING OPINION OF JUDGE WAGNER.

The judgment which was given in evidence, and upon which

this suit was founded, stated clearly that the defendant was personally served with notice, and appeared and defended by attorney. The defenses that are now set up to that judgment resolve themselves into two points, namely: that the defendant was not served with process, and that the judgment was obtained by fraud. It may be here remarked that the plea of fraud was denied, and no evidence given or offered to show that any existed; unless the allegation that judgment was rendered without the service of process on defendant is to be construed into a fraudulent obtaining of it. That the Circuit Court of Mississippi, in which the judgment was rendered, was a court of competent jurisdiction, is not disputed. The question, then is, will the defendant be permitted to contradict the record and deny notice, when it is expressly averred therein that he had such? I had supposed that, since the decision in the case of Warren v. Lusk, 16 Mo. 102, the question was conclusively settled and at rest in this State. The profession have been of that opinion, and the subsequent cases have followed it. That was an action upon a judgment rendered in Illinois, and Lusk defended upon the ground that he was not served with original process in the cause and never appeared thereto, and did not authorize any attorney to appear in his behalf. The record stated that Lusk appeared by his attorney and filed a demurrer, which being afterwards withdrawn, a decree was rendered against him *pro confesso*.

There was no recital in the judgment that Lusk was served with process, but simply an appearance by attorney; and yet, after the most exhaustive argument by counsel, and mature deliberation by the court, it was held that, under the act of Congress, where it appeared from the face of the record that the defendant appeared by his attorney, evidence to show that the attorney had no authority to appear was not admissible. Here the case is stronger; the record avers the service of notice as well as an appearance by attorney, and if "full faith and credit" is to be given to it, I cannot easily see how a party can be allowed directly to deny it in the courts of this State. If its verity can be contradicted by a simple allegation of its falsity, it seems to me that the constitutional provision is destroyed. That there

are cases which allow such a line of defense, I am fully aware, but I think the rule adopted by this court in its previous decisions contains the true principle and should be adhered to.

Mr. Bigelow, in his recent treatise on estoppel, speaks of Warren v. Lusk as one of the cases in which the constitutional provision and act of Congress in relation to the judgments of sister States have been faithfully followed. (Bigel. Estop. 145.)

The jurisdiction of the court rendering the judgment may always be inquired into, and if no proper notice was served so as to subject the parties to the jurisdiction of the court, that will be a cause for impeaching the record.

Thus, in the case of D'Arcy v. Ketchum (11 How. U. S., 165), it appeared that a judgment had been rendered in the State of New York in favor of Ketchum against Gossip & D'Arcy, upon a partnership note of theirs. There was personal service on Gossip, and no service on D'Arcy, who was an inhabitant of Louisiana. Judgment was rendered against D'Arcy, in accordance with a New York statute, which provided that where joint debtors were sued, and one of them brought into court, judgment should go against the others in like manner as if they were served with process, the service of process on one being regarded as constructive service upon the rest. An action upon this judgment was brought in the Circuit Court of the United States against D'Arcy. The court held that under the act of May 26, 1790, the record was entitled to full faith and credit, and gave judgment accordingly. This judgment of the Circuit Court was reversed in the Supreme Court on appeal, where it was held that the courts of New York acquired no jurisdiction over D'Arcy, and that, not being a citizen or inhabitant of that State, he could not be affected by laws to which he was not amenable. But the record in that case did not show that any process had been served upon D'Arcy.

See also upon this subject Latimer v. The Union Pacific Railway (43 Mo. 105), where we held that a State, by its Legislature, could not grant jurisdiction to its courts over persons or property not within its territory.

But these were cases of constructive or simulated notice, and the impeachment of the judgments did not involve a contradiction of

the recitals or averments in the record. If the record states that personal process was had, it imports absolute verity, and it cannot be averred against.

This question was recently reviewed in the Supreme Court of the United States, and the authorities commented on. One of the defences set up to the judgment in controversy was that it was procured and obtained by fraud, but that defense was held bad. Fraud can be pleaded only where the merits of the action are open to controversy. And the court held unanimously that, subject to the qualification that they are open to inquiry as to the jurisdiction of the court which gave them and as to notice to the defendant, the judgment of a State court, not reversed by a superior court having jurisdiction, nor set aside by a direct proceeding in chancery, is conclusive in the courts of all the other States where the subject-matter of the controversy is the same. (Christmas v. Russell, 5 Wall. 290.)

The Supreme Court of the United States is the legitimate tribunal to definitely and finally construe the national constitution and the acts of Congress, and I am content to abide by its judgment. The established rule is that so long as the judgment remains in force it is of itself conclusive of the right of the plaintiff to the thing adjudged in his favor, and it can only be reversed, set aside or impeached by a proceeding in the jurisdiction where it was rendered. Strangers may show that it is fraudulent, but parties and privies are conclusively bound.

For the foregoing reasons I dissent from the conclusions arrived at by the majority of the court.