VIRGINIA ANN HILL, RESPONDENT, v. JOHN JUDSON HILL, APPELLANT.—236 S. W. 2d 394.

Kansas City Court of Appeals. Opinion delivered January 8, 1951.

*Michael D. Konomos* and *William M. Day* for appellant.

*I. Frank Rope, Arnold N. Shanberg,* and *Herbert M. Rope.* for respondent.

DEW, P. J.—The respondent, as plaintiff in the trial court, brought this action for divorce against John Judson Hill, alleged to be her husband, and pending the same, the plaintiff filed a motion for temporary alimony, suit money and attorneys' fees. The motion was sustained and the plaintiff was allowed $750 attorneys' fees and $100 a month temporary alimony. Defendant appealed from the order so made.

For the purpose of this appeal it it sufficient to say that the plaintiff's petition for divorce alleges the marriage on May 8, 1919, and certain indignities as ground for divorce, together with temporary and permanent alimony, and attorneys' fees. The petition further states that the plaintiff and defendant are the owners of certain substantial real estate and personal property entirely in defendant's possession and control.

The answer admits the marriage, denies the charges and avers that the defendant filed suit for divorce against the plaintiff on March 24, 1926, in Iowa, wherein service was had as required by the laws of Iowa then in force and effect, and that plaintiff herein made default in said divorce case and a decree of divorce was granted the defendant herein against the plaintiff on September 16, 1926. The answer alleges that such decree is entitled to full faith and credit in the instant case, and is a complete bar to this action, and that the decree so obtained in Iowa recites the service of legal notice and proof thereof. Attached to the answer as an exhibit is a copy of the Iowa decree referred to.

The reply herein admits the filing of the Iowa suit for divorce by the defendant, and that a decree was entered in same in favor of this defendant, but alleges that said decree is void and is not entitled to full faith and credit because the decree was obtained through fraud on the part of this defendant in fraudulently obtaining constructive service in said Iowa case by his false affidavit therein that this plaintiff was then a nonresident of Iowa and her residence was unknown, when in fact she was at the time a resident of Iowa, and her whereabouts at all times were known to the defendant (plaintiff in the Iowa case). The reply further states that the plaintiff herein had no notice of such Iowa decree until July, 1949; that even if such decree be valid, which she denies, then in the alternative, a common law relationship existed between the parties subsequent to the Iowa decree, and that the defendant is estopped from relying on the Iowa decree after his failure for 23 years to disclose its rendition to the plaintiff herein.

A pleading entitled a ''reply to the reply'' was filed by the defendant, alleging that the plaintiff's reply is a collateral attack on the Iowa judgment; that such decree is an adjudication of the matters set out in the reply; that the plaintiff here had full knowledge of the Iowa decree as of the date thereof, or shortly thereafter; that defendant has not lived with the plaintiff since the Iowa decree; that plaintiff was fully aware of defendant's remarriage, and has conducted herself and held herself out to others as a single woman, and she is estopped to deny said Iowa decree. The Iowa statute was also pleaded, barring action to review a decree for fraud in the obtaining thereof after a period of two years.

There seems to be no dispute in the record that plaintiff and defendant are both of the Negro race; that they were duly married in Kansas City, Missouri in 1919, as alleged; that they thereafter lived as husband and wife in Mason City, Iowa, until 1926; that defendant herein filed action for divorce against plaintiff in March, 1926, in Iowa; that there was no service on the defendant (plaintiff here) in the Iowa suit other than by publication on a sworn application of the plaintiff therein, dated February 23, 1926, and filed March 2, 1926, alleging that ''Service of the original notice of the pendency of said cause cannot be made upon the defendant within the state of Iowa''; that a decree in the Iowa case was rendered by default in favor of the present defendant on September 16, 1926. The Iowa statute pleaded in plaintiff's reply, pertaining to service by publication, provided ''Service may be made by publication, when an affidavit is filed that personal service cannot be made on the defendant within this state * * * when the action is for a divorce, if the defendant is a nonresident of the state, or his residence unknown''. Code of Iowa, 1924, Section 11081.

The Iowa decree of September 16, 1926, recited the default by the defendant therein (plaintiff here); the appearance of the plaintiff therein in person and by attorney; that the court examined the

original notice and proof of service therein and found the same sufficient under the law; that the court thereupon heard the evidence under the petition and found the allegations thereof to be true; that defendant therein had been guilty of cruel and inhuman treatment such as to endanger the life of the plaintiff, and held and directed the said marriage be dissolved.

According to the testimony of the plaintiff she and her husband lived together from the date of their marriage, about two years in Kansas City, Missouri, later moving to Mason City, Iowa; that in May, 1926, she and defendant went to Alabama to attend the funeral of plaintiff's mother; that in August, 1926, at the suggestion of defendant, she took a vacation trip to California and remained there until shortly before Thanksgiving of that year, when she returned at the request of the defendant. She said that on March 2, 1926, the date the defendant's affidavit to obtain service by publication in his divorce action in Mason City, Iowa was filed, she was then living with him in that city and knew nothing of the divorce proceedings. On September 16, 1926, the date of the decree obtained by her husband in Iowa, she was still in California on her vacation trip. While there she received several letters and telephone calls from her husband, who at all times knew of her whereabouts. She testified that after her return from California, she thereafter lived with defendant in Mason City, Chicago, Kansas City and other cities.

She testified to various separations growing out of quarrels, involving abuse, cruelty and other mistreatment of her on the part of her husband and temporary separations following the same. On one occasion, while living together in Chicago, she had her husband arrested, and in that proceeding he admitted that he was her husband. In 1947, her husband requested her to join him in Kansas City and sent her railroad fare, whereupon she resided with him in Kansas City for some time as husband and wife. At no time had she yet been advised in anywise of the divorce decree in Iowa. On June 23, 1949, while living with defendant in Kansas City, another quarrel ensued and she left the home for her own protection. Returning with her brother to obtain her effects, she was told by the defendant for the first time that he had already divorced her. He had in the meantime married another woman with whom he had lived for several years and from whom he was divorced. In the course of plaintiff's testimony several letters were introduced, written by the defendant to plaintiff, expressing his affection for her and urging her to return, one letter being as late as May 15, 1947. She testified that the defendant had at one time shown her $8000 in government bonds acquired during their marriage, and that she had counted his weekly rental collections in sums of $400 to $500 a week. She also testified that defendant had $10,000 in cash in banks, and several building and loan accounts. She said that none of this money was in her possession, and that she was without means. She also testified that she desired to take deposi-

tions in Chicago, Mason City and Los Angeles, and pay attorneys' fees. She was also in need of medical attention.

Plaintiff's brother testified that he heard the defendant tell the plaintiff on June 23, 1949, that he had already obtained a divorce from her and it wasn't necesary for her to get one. He also testified that the defendant told him that he had about $8000 in bonds and owned various pieces of real estate in white neighborhoods.

Defendant testified that in Mason City in 1926, plaintiff complained of his coming home late when he was employed at nights, and she left the home the latter part of February, 1926; that he learned she was in California and obtained her address and telephone number. He urged her to return and later told her over the telephone that he had started a divorce case against her. He said that plaintiff did not return until after the divorce was obtained and upon her return he told her of the decree. He denied that he, and plaintiff thereafter lived together as husband and wife, although admitting that at various times plaintiff lived with his relatives in Kansas City and at one time they both lived in the home there although occupying separate quarters. He testified that he remarried and had lived with his second wife for several years and obtained a divorce from her in 1940. He admitted that he still had invested some $7000 in property in Kansas City, but owed a mortgage of $3700. He said he possessed some of the property mentioned by the plaintiff. He admitted that some two weeks before the trial he had told the plaintiff that he had $16,000 in bonds, and certain pieces of real estate in another name.

Other witnesses on defendant's behalf testified that the defendant had told plaintiff while they were living in Mason City in 1926, that she was no longer his wife, and that he had divorced her.

The defendant's alleged second wife testified to her marriage to defendant in 1936, and that thereafter plaintiff wrote letters from time to time to the defendant, and that on one occasion in 1937, the witness saw plaintiff in St. Paul and showed her the marriage license under which she had married the defendant, and requested plaintiff to stop writing to him, and plaintiff indicated by her replies that she would refuse to remarry him. The witness claimed credit for much of the property acquired by the defendant, and admitted having received part of it. Other property conveyed by the defendant had been deeded to the witness's daughter. Records were introduced showing conveyances by the defendant of five tracts of real estate on June 24, 1949. There was other evidence to the effect that when plaintiff visited in defendant's home in Kansas City in 1948, they occupied separate quarters.

In rebuttal, plaintiff admitted having met the defendant's alleged second wife in February, 1948, but denied that any marriage license was shown her, and denied stating that she would or would not remarry the defendant, and reiterated that she had never been told of the divorce until June, 1949.

250

The court in the present proceedings, in announcing his ruling, said, in part:

"I think I am going to make her an allowance. I think there is enough testimony here to justify the possibility that they are still married, if under no other theory than the common law theory, common law marriage. And without it she is destitute, to be able to combat the matter without some protection. * * * This is a temporary proposition. If I held otherwise, now, it would just practically foreclose the trial of this case on its merits, in a way. It isn't, of course, an adjudication that there was not a valid judgment. I think in a temporary matter of this type that she could well and easily, possibly lose her suit on the merits, but for the purpose of this hearing, isn't all this court is required to be reasonably satisfied? * * * That there is a possibility of them still being husband and wife, and that some injustice has been done? * * * For that reason, I feel as far as this hearing is concerned, I should make some allowance".

Counsel for the defendant suggested to the court that the allowance should be confined to the expenses of the plaintiff's trial and not to include temporary alimony. The court stated that if she was entitled to one allowance, she was entitled to the other under the evidence.

Defendant's seven points on this appeal may be condensed and restated as follows: (1) The Iowa decree is res judicata as to the present divorce action; (2) that the attack made upon it by plaintiff's reply is insufficient, being based on a mere charge of false swearing to a fact determined by the Iowa court and not extrinsic to the issues therein, and is not authorized by reply under the present Missouri Code of Procedure, is a collateral attack on a judgment, regular on its face, and on grounds not permissible under the law, to which decree full faith and credit must be extended in Missouri; that plaintiff is guilty of laches by her conduct which precludes her at this late date from securing the relief asked; that, therefore, there is no valid marriage on which to predicate temporary alimony and attorneys' fees in the present case, which allowances were an abuse of discretion of the court and were excessive.

Plaintiff contends that the purported decree in Iowa, though legal on its face, was obtained by fraud, as shown by clear and cogent evidence; that it can be attacked collaterally herein on jurisdictional grounds on evidence dehors the record; that it is therefore void and entitled to no credence in the courts of this state; that therefore the original marriage status remained and if not, then in the alternative, the evidence established a common law marriage between the parties under Iowa decisions cited; that the court had the authority and the discretion to make the allowances complained of, which were reasonable in amount.

In his reply brief defendant makes the point that even if the Iowa decree may be collaterally attacked, which he denies, it does not

necessarily follow that the decree is void and he states: "The judgment is not void until so determined upon a full hearing of all the evidence. To this point we have not arrived as yet in this case. The trial court confined the hearing on the motion to the mere making of a prima facie showing. A judgment cannot be set aside upon such a showing, nor does it impair its efficacy". And again, "There being no finding that the decree is void for fraud in the procurement thereof, the allowances should not have been made".

Whatever limitations applied to the office of the reply under the old code, the present Code of Civil Procedure must be applied to the instant case. Section 40 of the present code authorizes and requires a reply to affirmatively set up fraud and other matters constituting avoidance or affirmative defense to matters set up in the answer. Carr, Missouri Civil Procedure, Vol. 1, p. 371. In our opinion plaintiff here had the right to plead in her reply the fraud, if any, in the procurement of the previous divorce decree pleaded in defendant's answer.

It is further contended by the defendant that plaintiff's reply is not a sufficient statement of fact upon which to found an attack on the Iowa decree; that the mere ground that the affidavit for service by publication was false is not sufficient. We deem the facts stated in the reply relative to the invalidity of the Iowa decree to be a sufficient statement of such issue, which issue the trial court concededly did not determine and which we do not determine in this appeal.

It is further contended that such defense is collateral in this case. It is plainly so. But a judgment of a sister state may be attacked in this state on jurisdictional grounds in a collateral proceeding by evidence de hors the record, notwithstanding the recitals of the foreign judgment.

The early case of Marx v. Fore, 51 Mo. 69, often cited in the later cases on the subject, involved a foreign judgment sued on in this state; wherein the record of the foreign judgment recited appearance therein of the defendant by attorney and by plea. The defendant in the action brought in this state attacked the foreign judgment, alleging his nonresidence in the foreign state at the time of the institution of the case there, that no service was ever had upon him, that he did not know of the suit and had not authorized anyone to appear for him in the case. The trial court struck out that defense to the foreign judgment upon the ground that the judgment could not be impeached. In holding that an attack upon a judgment by way of equitable defense was permissible, the Supreme Court, upon appeal, affirmed the following language in a similar suit, at page 76: "For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgments are void, and therefore that the supposed record is in truth no record. If the defendant did not have proper notice of, and did not appear to the original action, all the state courts, with one exception, agree in

opinion that the paper introduced as to him is no record; but if he cannot show, even against the pretended record, that fact, on the alleged ground of the uncontrovertible verity of the record, he is deprived of his defense by a process of reasoning that to my mind is little less than sophistry''. In a separate concurring opinion in that case it was said, at page 77: ''It may be conceded that at law, where there is no apparent irregularity, such judgments import absolute verity; but in equity they may be set aside when obtained by undue and fraudulent contrivances, in the absence of and without notice to the opposite parties''. The Marx case was approved in Stuart v. Dickinson, 290 Mo. 516, 235 S. W. 446; Leichty v. Kansas City Bridge Company, 354 Mo. 629, 633, 190 S. W. 2d 201.

It is true the defendant here contends that the attack on the Iowa decree is not strictly jurisdictional, but quasi-jurisdictional, conclusively determined by the Iowa court and cannot be collaterally attacked. However, it is considered as in the nature of a jurisdictional inquiry. 19 C. J. p. 102, Sec. 248. The Supreme Court of this state en banc has approved such attack made in respect to ''notice to the defendant'' by false affidavit for publication service. In the Leichty case, supra, the court said, p. 633: ''Beginning with Marx v. Fore, 51 Mo. 69, this court has consistently held that judgments rendered in other states are open to inquiry as to the jurisdiction of the court *and notice to defendant* notwithstanding the recitals of such judgments''. (Italics supplied). The court in that case further said at page 635: ''A divorce case is not strictly in rem, but, of necessity, a state must have sufficient control over the marriage status of its residents to enable its courts to affect that status without personal service if such service cannot be obtained. *However, due process requires that reasonable and good faith effort be made to notify the absent spouse*''. (Italics supplied).

In that case the Supreme Court held that it was not inconsistent with the full faith and credit clause of the Federal Constitution to permit an attack on a foreign divorce decree made in a collateral proceeding on the ground that the affidavit for publication in the divorce case was false and other fraudulent conduct on the plaintiff's part to obtain constructive service was shown. Again it appears in the case at bar that the attack on the Iowa decree in the present case as made by the plaintiff's reply and by the evidence offered to support it, is a proper issue in this case on the trial upon the merits, although in the nature of a collateral attack. The trial court admittedly declined to determine that issue in its order for temporary alimony and attorneys' fees, and it is not before us for review for that and other reasons hereinafter pointed out.

Even though the attack on the Iowa decree be a proper defense in this case and properly pleaded, two significant facts must be borne in mind: (1) the court specifically declined to pass on the validity

of the Iowa decree, expressed doubt on that issue, found that there was some proof of injustice to the plaintiff on the merits and a prima facie case for divorce had been shown; (2) the order appealed from was made in a proceeding for temporary alimony and attorneys' fees in a pending divorce action.

Temporary alimony and attorneys' fees to the wife in a pending divorce action are authorized by Section 1519, R.S. Mo., 1939. The purpose of such relief is to support her pending the divorce case, and to provide her means with which to present her petition and defense. To obtain an order for alimony and attorneys' fees pendente lite she must present a prima facie case by her pleading and proof; that is, prima facie proof of the marriage and of the merits pleaded. ,27 C. J. S. p. 894, Sec. 208(b), p. 896, Sec. 208(c-2). If the marriage is admitted, its continuation is presumed until it is shown by proper pleading and proof to have been previously dissolved. If the defense has been properly pleaded that a foreign decree, regular on its face, has previously been rendered dissolving the marriage, and proof of such defense is introduced at a hearing on the plaintiff's motion for temporary alimony and attorneys' fees without any evidence or finding to the contrary, the previous decree is res judicata as to the dissolution of the marriage, entitled to full faith and credit in the pending case, and the court would have no jurisdiction or authority to grant the temporary order. Hanna v. Hanna, 32 S. W. 2d 125; 27 C. J. S. p. 896, Sec. 208(c). If however, the existence or legality of the previous decree is properly denied and disputed by the plaintiff's reply and proof at such hearing, then the previous decree pleaded by the defendant remains but a defense, like any other defense, controverted by the pleadings and proof, against which she should be permitted to defend, and which is to be determined in the trial of the case on its merits. Carroll v. Carroll, 68 Mo. App. 190, 193. Such was the reasoning properly adopted and pursued by the trial court in the instant case wherein it found that a prima facie case of the marriage and the plaintiff's grounds for divorce had been proved, and found that the issue of the previous decree as res judicata was controverted in the pleadings and proof, that it was a matter for determination upon the trial on the merits, and declined to determine the same in the present proceedings for temporary alimony and attorneys' fees. Under such circumstances, the court, in its discretion, was authorized to make allowances to the plaintiff for temporary alimony and attorneys' fees.

It is also urged that the allowances were excessive. There was evidence which, if believed by the court, substantially supported the amounts allowed. There was testimony that the defendant was possessed of substantial real and personal property of such amount and value as to justify the amounts fixed by the trial court. The order of the trial court allowing plaintiff herein temporary alimony and attorneys' fees should be and is hereby affirmed. All concur.