Annie Alice EMBRY, Plaintiff-Appellant,

v.

ESTATE of Charles W. MARTZ, Herbert A. Mouse, Administrator, Defendant-Respondent.

No. 50084.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Robert G. Oberlander, Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, and George T. Sweitzer, Jr., Harrisonville, for appellant.

Belisle & McNabb, H. H. McNabb, Jr., Butler, Poague, Brock & Wall, Barkley M. Brock, Clinton, for respondent.

HYDE, Presiding Judge.

Plaintiff's claim for services was filed in the Probate Court of Bates County but transferred to the Circuit Court as authorized by Section 473.420, subd. 2. (Statutory references are to RSMo and V.A.M. S.) After verdict and judgment for plaintiff for $25,000.00, the court granted a new trial on defendant's motion and plaintiff has appealed.

The court's order stated that it sustained the motion "for error committed by Court in admitting in evidence over objection of defendant deposition of Mervin Embry, spouse of claimant, and in reading to jury Instruction No. 1 offered by Claimant."

The case was submitted on the following verdict-directing instructions given at the request of each party.

Instruction No. 1: "The Court instructs the jury under the law of Missouri, that, absent a family relationship, where one performs valuable services for another, the benefit of which has been received and enjoyed by him, the law presumes an intention on the part of the former to charge and the latter to pay the reasonable value thereof and implies a promise on the part of the one receiving the services to pay a reasonable value for said services.

"Therefore the Court instructs the jury if you find and believe from the credible evidence that Annie Alice Embry from 1946 to the death of Charles Martz, in February, 1962, rendered to Charles Martz, now deceased, services in cleaning his house, in helping to maintain his house, in washing and ironing his clothes, in mending his clothes, in laundering his bed linens, in cooking and serving his meals, in attending his needs when sick, in helping him in his bookkeeping, in taking him to the doctor, in helping him in his correspondence, in procuring groceries and household supplies, and in assisting in selecting his clothing, if so, and if you further find that at the time such services, if so, were performed that Charles Martz accepted the benefits of said services, if he did, then your verdict will be for Annie Alice Embry in such sum as you believe from the evidence such services are reasonably worth, not to exceed $25,000.00."

Instruction No. 3: "You are instructed that where services are rendered and received, a contract of hiring, or obligation to pay, will be presumed; but a presumption may arise from the relationship of the parties that the services rendered are acts of gratuitous kindness, and in this case it is a question for you, taking into consideration all the circumstances, including the nature of the relationship of the parties, to determine whether there was any implied or express contract for compensation or not.

"Now, unless you find from the evidence in this case that plaintiff rendered services to Charles W. Martz, and that at the time such services were rendered Annie Alice Embry intended to make a charge therefor and to receive compensation from the said Charles W. Martz over and above any benefits she may have received, if any you so find, from the said Charles W. Martz, then you will find the issues herein for the defendant, and this is true even though plaintiff may have thought that deceased would bestow on her or some member of her family a gift of a portion of his property by way of his Will or otherwise."

Defendant's claim of error in Instruction 1, on which he seeks to support the court's order, is that it assumes there was no family

relation between plaintiff and Charles Martz, deceased. Defendant's position is that, to authorize a verdict for plaintiff, it was essential "to either require the jury to find that there was an express promise to pay or the jury had to find there was no family relationship." We note that the instructions offered by each party state an obligation to pay for the services rendered and received unless there was a family relationship or some other relationship indicating gratuitous services (no specific relationship is submitted by Instruction No. 3 and only family relationship is argued in defendant's brief) so both adopted the same theory as to obligation to pay if there was no family relationship. (For other forms of such instructions see 4 Raymond Missouri Instructions 263–265.) Plaintiff says there was no substantial evidence from which the jury could find a family relationship, within the legal definition of that term, so that there was no error in assuming it. We said in Steva v. Steva, Mo.Sup., 332 S.W. 2d 924, 926: "The term 'family,' within the rule under discussion, 'has been defined as a collective body of persons under one head and one domestic government, who have reciprocal, natural, or moral duties to support and care for each other' "; and that "[a] relationship of sisters-in-law, in and of itself, does not give rise to a presumption that services are rendered gratuitously." In this case, the parties were not related by blood, marriage or adoption, legal or equitable.

The relevant facts are that Martz employed plaintiff's husband as a farm hand in 1940 at $30.00 per month and a gallon of milk a day, furnishing them a tenant house on his farm. Plaintiff and her husband and child moved into the tenant house and another child was born to them there. In 1943, plaintiff's husband's monthly pay was raised to $45.00 per month. In 1947, Martz entered into a partnership agreement with plaintiff's husband for the operation of his 350-acre farm, including joint ownership of livestock and other property. Just before this, in 1946, Mrs. Martz, then about

60, had a stroke and plaintiff commenced cooking for her, doing laundry, looking after her chickens and getting groceries. Mrs. Martz had another stroke in 1949 and died in 1950. After her funeral, Martz came to plaintiff and her husband and asked them to move into his house, "stay with me and take care of things * * * take care of the house and everything," saying: "If you will do that, I will see that you are paid and paid well for it." After talking it over, they did move into Martz's house and plaintiff "did all of his housework, cooked his meals, washed his clothes, laundry, just everything housekeepers do"; also including shopping, bookkeeping, letter writing, reading, painting and paperhanging. Martz had his own room and plaintiff, her husband and children had their own rooms. Martz paid for electricity but rented the tenant house furnished with the furniture owned by plaintiff and her husband.

In 1952, Martz remarried and plaintiff and her husband and children moved back to the tenant house but plaintiff did laundry and heavier housework for Martz during that time. However, this marriage ended in a divorce after ten months and according to his statements to plaintiff and her husband cost him $10,000.00. Martz asked them to move back to his house and help him again, saying: "I've got myself in an awful mess * * * if you'll come back, I'll see you're paid for it." Several weeks later, they decided to try it again and stayed until Martz died in February 1962. Plaintiff did the same housework as before but Martz required more care after 1955 because of illness, having a prostate operation and in 1957 a heart attack. Plaintiff's husband said they treated Martz "like one of the family." They called him "uncle", or "unc", as did others in the neighborhood, and exchanged gifts on birthdays and holidays but Martz always spent Christmas with relatives at Carthage. There was testimony that Martz said at Carthage in 1957 that he had a will and wanted to be sure that plaintiff and her husband were provided for. He bought gifts, clothing and

other things at times for plaintiff, her husband and children; sometimes he gave the children small amounts of money to spend and the children did things for Martz. He permitted all of them to use his automobiles and he used theirs. The farm partnership was terminated in 1955 and thereafter plaintiff's husband rented the whole farm, paying $435.00 annually for the pasture land of about 150 acres and the buildings and lots and giving Martz a share of the grain raised. (Defendant had evidence that use of the pasture was worth considerably more.) Martz had his room in the house as before and paid for lighting, heating and telephone except long distance calls of plaintiff's husband and his additional directory listing. Defendant had nieces and nephews living nearby who visited him at times, invited him to their homes for meals, and sometimes took him to see a doctor or to other places and wrote letters for him. The administrator of the Martz estate said when plaintiff and her husband settled with him for the cash rent due, he asked them if there was anything the estate owed them and they both said "no", but plaintiff denied this. Plaintiff's husband became incapacitated from a heart attack in May 1961, about nine months before Martz died.

Defendant cites Nelson v. Poorman's Estate, Mo.App., 215 S.W. 753, as showing there does not have to be a blood relationship or legal adoption to establish a family relationship. However, in that case, claimant had been taken into decedent's home when a child about 10 years old and lived there with decedent and her husband, until her death 12 years later, and sought payment for services during this period. In a similar case, cited by defendant, Broyles v. Byrne, Mo.App., 13 S.W.2d 560, where claimant, from about the age of 12, lived with decedent until her death 13 years later, a judgment for claimant was affirmed, there being substantial evidence of an agreement to pay for her services. In Smarr v. Smarr's Estate, Mo.App., 283 S.W. 461, deceased lived in the home of his brother and his wife, the claimant and their son, for more than 40 years, and was treated as a member of the family. The brothers were in partnership in business and jointly owned farm and business real estate. After claimant's husband's death, she and deceased entered into a partnership for operation of the properties and other business, which continued until decedent's death two years later. The court found a family relationship but also found substantial evidence of intent of deceased to pay for housekeeping services. See also Brunnert v. Boeckmann's Estate, Mo.App., 276 S.W. 89, 258 S.W. 768; Smith v. Sims, Mo.App., 258 S.W. 1032; Hyde v. Honiter, 175 Mo.App. 583, 158 S.W. 83. The facts in this case are very different from those in the cases cited by defendant.

■ Our conclusion is that there was no substantial evidence to show a family relationship between plaintiff and Martz in this case. "[I]t has been held that to constitute a 'family' there must be (1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support." 35 C.J.S. p. 939. In this case, the status of the parties was by a business agreement and not based on any legal or moral obligation of either to support the other. The relationship between these parties grew out of and continued on a contract basis between plaintiff's husband and Martz, first as a partnership contract for operation of his farm and finally as a rental contract for the whole farm, including the house (with Martz reserving a room and other uses of it), on a cash and grain rent basis. Because of the business relation between Martz and plaintiff's husband, plaintiff was available for the housekeeping services Martz required and no doubt it was more convenient for him to have her render them than to employ someone else. There was

no legal or moral basis for an obligation of either to support or care for the other. Under these circumstances, plaintiff's services (not included in any contract between her husband and Martz) and Martz's acceptance of them "implies a promise to pay." Steva v. Steva, supra, 332 S.W.2d l. c. 927; Muench v. South Side National Bank, Mo.Sup., 251 S.W.2d 1; see also 2 Limbaugh's Missouri Practice 178, Sec. 785, and cases cited, and American Law Institute Restatement of Restitution, Sec. 1 and Comment b. In the Steva case, we held that no family relationship existed, although the claimant was the decedent's brother's wife and decedent, a bachelor, lived in their home after the house on his farm burned until he built another.

■ In Thomas v. Fitzgerald's Estate, Mo.App., 297 S.W. 425, 428, it was held that the record would not "support the conclusion that what is termed in the law the family relation existed between plaintiff and deceased" but "was in the nature of a business relation." In that case, the plaintiff during most of the time stayed at the home of deceased, a bachelor, "did practically all of the housework and at times assisted in rounding up the cattle, which usually consisted of 100 head, and when present assisted in the feeding, and did other work on and about the place." In Boyher v. Gearhart's Estate, Mo.App., 367 S.W.2d 1, the claimant, deceased's niece, quit her job and moved into his house to take care of him after his wife died. The court said: "Plaintiff was under no legal or moral duty to render this service; nor was there natural, legal or moral duty on the part of either to support the other. We find the evidence wholly insufficient to show that plaintiff and deceased were members of a family under the facts and circumstances shown. Nor was there any evidence of such a relationship between the parties which would lead a reasonable person to believe that plaintiff intended her services as a gratuity. Under such circumstances the law implies an agreement that the services were to be paid for." See also Smith v.

Collins, Mo.App., 243 S.W. 219; Taylor v. Hudson, 145 Mo.App. 377, 129 S.W. 261. Since defendant makes no complaint against this instruction except failure to require a finding that there was no family relationship, we hold the trial court's order cannot be sustained on the ground of error in giving Instruction No. 1.

■ Likewise, the other ground for granting a new trial, error in admitting the testimony of plaintiff's husband, cannot be sustained. Defendant claims that his testimony was prohibited by Sec. 491.010 because Martz was dead. Defendant says the only question is whether or not plaintiff's husband was a party to the contract. Defendant argues that the agreement to take care of Martz was a joint contract with plaintiff and her husband and points out that plaintiff's husband had also filed a claim against the estate which included "having the companionship and the presence of his family." (What the amounts he claimed were for does not appear.) However, plaintiff's action is not based on contract but is in quantum meruit for the services she alone rendered to Martz as requested and accepted by him. Her husband has no interest or right in her compensation for her own services. A similar contention was made and overruled in Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875, 879, in which the deceased's son-in-law obtained a judgment for services in taking care of his wife's father. There was substantial evidence that his services should be compensated "rebutting the presumption arising out of the family relationship that the services were performed gratuitously." Claimant's wife was permitted to testify although "her father made an agreement with her and he also made a second agreement with her husband." We said: "The evidence was sufficient to justify a finding that the witness was competent because the agreement sued on was a several one between the plaintiff and Mr. Minnick." Claimant's wife did not present an account for this care, in that case, saying "that agreement was between my husband and my father."

Likewise, in this case, it is not contended that plaintiff's husband has made any claim for housekeeping and other services included in plaintiff's claim. See Bush v. Evans, 218 Ark. 470, 236 S.W.2d 1013; see also Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 304, and cases cited therein in note 13; and annotation, 27 A.L.R.2d 538, 565; 58 Am.Jur. 196, Witnesses, Sec. 320; 97 C.J.S. Witnesses § 172, p. 615; see also Sec. 491.020. We hold there was no error in admitting the testimony of plaintiff's husband.

. The order granting a new trial is reversed and cause remanded with directions to reinstate the verdict.

All concur.