**Carl RIDINGER, Respondent,**

v.

**Raymond HARBERT, Executor, Estate of Myrtle L. Cox, deceased, Appellant.**

**No. 24563.**

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1966.

Robert C. Frith, Chillicothe, for appellant.

Chapman & Chapman, by Nolan Chapman, Jr., Chillicothe, for respondent.

MAUGHMER, Commissioner.

This is a suit for services brought by plaintiff, Carl Ridinger, against Raymond Harbert, Executor of the estate of Myrtle Cox, deceased. The jury trial resulted in a verdict for plaintiff in the sum of $5,000. The executor has appealed.

Myrtle Cox and her husband, Milt Cox, resided on a farm near Chula, in Livingston County, Missouri. The plaintiff, who had been working for and living at the home of a neighbor, Mr. Bowman, moved into the Cox home some time during the year 1952. Most of their tillable land was rented out, but the Coxes did keep a few cows, some hogs, some sheep and some chickens. At the time plaintiff came there, Mr. Cox was crippled by arthritis and at least close to being an invalid. He died on May 23, 1958, about six years after plaintiff came into their home. Mrs. Cox died on May 23, 1964, exactly six years to the day after her husband's death. By this claim, Mr. Ridinger sought recovery of $18,000, for his services

to Mrs. Cox for the twelve year period from 1952 to 1964.

We summarize the evidence—first that which was offered and received on behalf of the plaintiff, Mr. Lloyd Bowman has known Mr. Ridinger for forty years, and Mr. and Mrs. Cox for twelve years. He is a farmer and was in the Cox home "a number of times". He saw plaintiff there "hauling hay with the tractor", "hauling manure out of the barn, mowing the yard, and working in the garden". Mrs. Cox said to him on various occasions: "I don't know what I would do without Carl, he takes care of me, he goes ahead and takes care of everything and I expect to make it right with him for his kindness and his work". "I have been there when Mrs. Cox was apparently well, considering her age, and Carl would be doing the chores, taking care of the stock, maybe hauling hay with the tractor, mowing the lawn". He said that sometimes they had two gardens and there were chickens.

Wallace Phillips, farmer, living one and a half miles from the Cox farm, speaking of plaintiff, said: "I have seen him fencing and taking care of truck patches and gardens", "I have seen him taking care of the livestock * * * feeding cattle and hogs", "I have seen him making fence, cutting weeds, hauling feed".

Raymond McCrary, a farmer, lived one mile from the Cox farm. He testified that he had seen plaintiff "hauling feed with the tractor, feeding livestock, seen him fencing on different occasions, working in the truck patch, such as that". He stated there was some field work he did not believe Ridinger was able to do.

Mrs. Homer Harris, wife of the pastor of the Alpha Baptist Church, said plaintiff "did housework when Mrs. Cox was not able, and even when she was, he helped her. He did the milking, he fed the hogs and calves and when Mrs. Cox was in the hospital, why, he stayed right there and took care of everything. He fed off the calves for her and hogs, got them ready for market".

Dr. R. W. Matheny, D.O., was in Mrs. Cox's home 23 times prior to her death and visited her in the hospital on many occasions. He considered her health to be "very poor". When he called at the Cox home he always saw plaintiff there, sometimes in the house, at the barn or around the premises.

Mrs. Arlin Gates had known plaintiff for about eight years. Their farm adjoins the Cox farm. For the first four years she described his activities this way: "Well, he done housework. He did the dishes and cooked. I have seen him around the farm feeding the hogs and milking". Then the Gates family moved to Chula and she "couldn't see him doing that too much".

Mr. Ralph Moore is a farmer. He regularly employed from two to five men as farm hands. He expressed the opinion that the services which plaintiff performed, as described by the witnesses, were reasonably worth $60 per month. He said his own full time farm hands received "their house, they got meat, they got milk, they got a garden spot, and utilities and anywhere from $175 to $225 per month."

The evidence generally revealed that plaintiff received his board and room, some clothing and the premiums on a burial insurance policy. The record does not disclose his exact age, but he is an elderly man.

On behalf of defendant, Mrs. Grace Harbert, sister of Mrs. Cox, testified. She said she was in the Cox home almost every day and that Mrs. Cox's health "wasn't too good". She declared that on many occasions Mr. Ridinger told her, "I am going to stay with Milt and Myrtle. I am going to get my room and board and clothes".

Raymond Harbert, nephew of Mrs. Cox, reported that he had several conversations with plaintiff concerning what he was being paid, and that Mr. Ridinger told him he was receiving "room and board". He also said that his aunt gave plaintiff money every time they went to town.

Mrs. Marjorie Harbert (wife of Raymond) said they tried to get Carl (plaintiff) to come to their place and she said to him: "Carl, we asked you to come up to my place first", and Carl replied: "Well, Myrtle needed me worse than you and she offered to give me room and board". She said she heard conversations between plaintiff and Mrs. Cox in which plaintiff agreed to work for his room, board and clothing. The jury, as trier of the facts, has passed upon these disputed, factual issues.

■ The plaintiff was not related to either Mr. Cox or Mrs. Cox by blood or marriage, nor was any family relationship deducible from their association. It is well settled that where there is no family relationship and no showing that the services were performed without expectation of pay, the law presumes an intention on the part of one rendering valuable services at the request of another, to charge therefor, and implies a promise on the part of the latter to pay the reasonable value thereof, which may be recovered in quantum meruit. Songer v. Brittain, Mo.App., 272 S.W.2d pp. 16, 20; Wells v. Goff, 361 Mo. 1188, 239 S.W.2d 301; Embry v. Martz' Estate, Mo. Sup., 377 S.W.2d 367, 370, 371.

On appeal appellant lists seven assignments of error. The first complains that the court erred in "overruling appellant's objection to introduction of evidence of respondent's services to Milt Cox prior to his death on May 23, 1958, thereby permitting the jury to consider and in their verdict award respondent compensation for services against the estate of Myrtle Cox which had been performed for Mr. Cox". Appellant does not indicate where in the record such testimony was received, nor do we find any such evidence. The jury was certainly not instructed to consider any services which plaintiff might have performed for Mr. Cox. Plaintiff's case was predicated upon a specific allegation and finding that they were rendered to Mrs. Cox. In Songer v. Brittain, 272 S.W.2d 16, 20, plaintiff sued to recover compensation for services rend-

ered as housekeeper and practical nurse for defendant and her husband from January 11 to October 20, 1948. Plaintiff had judgment for $1500. On appeal defendant urged "that she could not be liable for debts of her deceased husband". It was ruled that plaintiff could recover from defendant in quantum meruit for services rendered to defendant or at her instance and request.

■ In Point II, appellant asserts there was no proper evidence as to the reasonable value of respondent's services, and that the award was grossly excessive. This proposition has not been developed by either the citation of any authority or by reference to it in the printed argument, as is required by Rule 83.05, V.A.M.R. However, we believe the testimony of the witness, Ralph Moore, that the services were worth $60 per month was competent. It is further our opinion that the allowance of $5,000 for six years of services rendered to Mrs. Cox after her husband's death, plus that part of the six years' services which were rendered to her alone prior to the death of Mr. Cox, who was an invalid, or nearly an invalid, cannot, as a matter of law, be ruled excessive.

■ In Assignment No. 3, defendant complains that he was not allowed to show that plaintiff was (1) "not capable of being a full employee" and (2) "he was not normal mentally". Here again the alleged error has not been developed by either citation of authority or by reference to it in the printed argument. However, as we read the printed record, it is not contended that plaintiff was a "full employee"— $60.00 per month (the estimate put upon the value of his services by the witness Moore) would not be adequate pay for full time work and plaintiff's own evidence contains testimony that there was "some farm work" that plaintiff was unable to do. We doubt if lay witnesses can just express the conclusion that a person is "not normal mentally". Certainly there was no evidence offered that plaintiff was mentally or physically unable to adequately perform the

tasks which plaintiff's witnesses said he did perform.

In his Fourth Assignment of Error defendant says the court refused to let him show that plaintiff "before and after he worked for Mrs. Cox and Mr. Cox had worked for his maintenance only". In No. 5, he says the court refused to receive in evidence Mrs. Cox's Last Will and Testament in which there was a bequest to plaintiff of $500.00. Again there is no citation of authority nor was there at the trial any formal offer of proof. Under this state of the record we shall not hold that the court's rulings on these matters constituted reversible error.

Defendant next says the court erred in giving Instructions No. 3 and No. 4 because the same were, in effect, peremptory instructions for plaintiff, and that at the time same were only proposed MAI instructions. We set out the instructions:

"INSTRUCTION NO. 3

"Your verdict must be for the plaintiff if you believe:

"First, the plaintiff furnished to Myrtle L. Cox valuable services before her death, and

"Second, Myrtle L. Cox accepted the benefits of such services."

"INSTRUCTION NO. 4

"If your verdict is in favor of plaintiff, then you must reward him the reasonable value of the services furnished".

There was no contention that plaintiff was in any way related to Mr. or Mrs. Cox and no suggestion that a family relationship existed. Instructions No. 3 and No. 4 told the jury that if it believed plaintiff "furnished services to Mrs. Cox before her death", and she accepted the benefits of such services, then the jury "must reward him the reasonable value of his services". We find nothing wrong with these instructions. We believe they prop-

erly declared the law. Defendant has neither cited nor suggested any appellate opinion or other authority which he contends holds otherwise.

Appellant's final point alleges the court erred in refusing defendant's Instructions Nos. 7, 8 and 9, "as being proper converse instructions". These suggested instructions are short and we incorporate the same, including the trial court's written ground for refusal, in this opinion.

"INSTRUCTION NO. 7

"Your verdict must be for defendant if you believe that plaintiff and Myrtle Cox agreed upon a basis of payment for any services rendered by plaintiff, and that Myrtle Cox duly performed her part of such agreement.

"Refused instruction No. 7 above is not MAI."

"INSTRUCTION NO. 8

"Your verdict must be for defendant if you believe that plaintiff has already been paid for all services furnished to Myrtle Cox.

"Refused instruction No. 8 above is MAI 33.20 proposed".

"INSTRUCTION NO. 9

"Your verdict must be for defendant if you believe that plaintiff and Myrtle Cox agreed upon the basis of payment for any services rendered by plaintiff, and that plaintiff was paid by Myrtle Cox for such services.

"Refused instruction No. 9 is not MAI".

The trial court apparently refused Instructions Nos. 7 and 9 because neither is an MAI instruction. No. 8 was refused because it was only MAI proposed. Probably these stated grounds in and of themselves are not valid grounds for refusal.

In support of this Seventh Assignment defendant invites our attention to the opin-

ion in Chance v. Atchison, Topeka and Santa Fe Ry. Co., Mo.Sup., 389 S.W.2d 774, 778 (opinion handed down April 12, 1965, which was after the effective date of MAI). There the Supreme Court said:

"In a converse instruction the defendant may submit either the exact converse of plaintiff's verdict directing instruction, Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, or the exact converse of any essential element of such instruction. Liebow v. Jones Store Company, Mo., 303 S.W.2d 660, 662. Such a converse instruction does not require affirmative testimony in support of it. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 464. The defendant 'may also submit facts in an instruction, the existence of which would disprove, that is controvert, one or more of the essential factual elements of plaintiff's case.' Liebow v. Jones Store Co., supra."

The case before us began when plaintiff filed his claim in the Probate Court of Livingston County on November 6, 1964. Therein he asserted that he had performed work and labor for deceased (Mrs. Cox) at her instance and request for a period of 12 years and that he had given credit to her estate for all payments and offsets to which it is entitled. The case was certified to the circuit court for jury trial. Defendant filed no pleading of any kind in either the probate or circuit court.

Counsel for defendant in his opening statement said the defense was that plaintiff was to receive room, board, clothing and payment of his burial insurance premiums and nothing more.

 The proposed instructions (7, 8 and 9) are certainly not "the exact converse of plaintiff's verdict directing instruction or the exact converse of any essential element of such instruction", as converse instructions are defined in the Chance case and by MAI 29.01, pages 245, 246. The exact converse of plaintiff's Instruction No. 3 would be that plaintiff did not furnish valuable services to Myrtle Cox before her death and that she had not accepted the benefits of such services. Defendant's only asserted error inherent in the refusal of his Instructions Nos. 7, 8 and 9 is that they were "proper converse instructions". Therefore, we might overrule the assignment without any further comment since appellant suggests no other error. However, the Supreme Court in the Chance case also tells us that defendant " 'may also submit facts * * * the existence of which would disprove, that is controvert, one or more of the essential elements of plaintiff's case.' " This type of instruction must have evidentiary support. The Chance opinion so holds and MAI so states.

 We find no substantial evidence that plaintiff and Mrs. Cox ever agreed "upon a basis of payment for his services". The only testimony touching this subject is that from some of Mrs. Cox's relatives to the effect that plaintiff said: "He was receiving room and board". Furthermore, if there was any such evidence of a contractual agreement, the instruction should declare what it was. If plaintiff had been paid "for all services rendered" either under a contract or as full remuneration under his quantum meruit claim, the instruction should point out what payments had been made; that is, room and board and premium payments on his burial insurance, as to which there was affirmative evidence. We are admonished by Rule 83.13(b):

"No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, materially affecting the merits of the action".

See Schraedel v. St. Louis Public Service Co., Mo.App., 248 S.W.2d 25. We find no error here committed against the appellant which, in our opinion, materially affects the merits of the action.

It is our belief that the jury had before it quite fully the fact that plaintiff had received board and room, plus the burial

insurance premiums, the exact amount of which was not revealed.

We find no reversible error and the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.