Joe (J. N.) JAYCOX, Appellant,

v.

Leona R. BRUNE, Administratrix of the Estate of Myrtle F. Reeves, Deceased, Joseph V. Reeves, Audrey Rawl, Maleta Kuhn, and Leona R. Brune, individually, Respondents.

No. 53056.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1968.

Marvin L. Dinger, Ironton, William E. Seay, Salem, for appellant.

Robert L. Carr, Potosi, for respondents.

EAGER, Judge.

This is an appeal by the plaintiff from a judgment for all defendants in a two-count suit. The action was against the Administratrix of Myrtle F. Reeves, her surviving spouse, and three daughters. The first count was an action to enforce a supposed oral contract to make a will in plaintiff's favor, leaving to him deceased's real and personal property if he "would look after her health and affairs and take care of her for the remainder of her life." The second count, filed in the alternative, sought recovery of $29,280 for services rendered to the deceased. Mrs. Reeves concededly owned real estate in Reynolds County aggregating some 700–800 acres, and also certain livestock and personal property. The services were rather specifically itemized, and the claim covered a period of from January, 1959, to the death of Mrs. Reeves on January 22, 1965. The first count was dismissed on motion of the defendants at the close of plaintiff's evidence; at the close of all the evidence the Court sustained the motion of the individual defendants to dismiss Count II as to them; it then took the issues on that count under advisement as to the Administratrix. It later rendered judgment in her favor and filed a memorandum opinion. Plaintiff's motion to set aside the judgment or grant a new trial was overruled by lapse of time and this appeal followed in due course.

Myrtle F. Reeves, who died in Reynolds County on January 22, 1965, at age 72, had lived in St. Louis with her husband until perhaps the late 1930's. She moved to Reynolds County and lived the rest of her life on land which she owned there. Her husband continued working in St. Louis until the latter part of her life, but came to the farm more or less regularly for varying periods and, it is said, did considerable work there. The plaintiff, when about 17 or 18 years of age, went to live at the home of Mrs. Reeves on the farm; it is not entirely clear whether this was at the time she came to Reynolds County or not but, in any event, he remained there until her death, a period of approximately 27 years. He was her second cousin. He apparently did no work of any consequence away from the farm and home and thus had no outside income. He was furnished lodging, food and clothing, supposedly by Mrs. Reeves, but through all the years he was paid no salary or wages. The evidence indicates that Mrs. Reeves paid various expenses for him, including insurance premiums, substantial payments on a tractor which he purchased, medical expense, subscriptions to magazines, and perhaps small amounts of cash and expenditures on a car which he supposedly owned in the later years. There was a

possible inference that plaintiff was in some sort of a partnership with deceased on all or a part of the cattle, but this is not clear. In the view we take of the case it will be unnecessary to detail the services which plaintiff performed. The trial court stated in its memorandum that he rendered long and valuable services and the record fully justifies that statement. Much of the testimony was consumed in particularizing these services on the one hand and belittling them on the other. There was substantial evidence of much work done by him both in the household and on the farm throughout the period in which he lived with Mrs. Reeves. During Mrs. Reeves' later years he performed almost continuous household and nursing services with occasional help from her three daughters, none of whom lived in the home. Mr. Reeves was also of some help later in the period. It was stated, more or less incidentally, that plaintiff was subject to epilepsy, but no details were developed.

■ Plaintiff, as appellant, makes three points in his brief: (1) that the Court erred in admitting in evidence a release; (2) that it erred in admitting exhibits consisting of several groups of checks; and (3) that it erred in overruling plaintiff's motion for a jury trial "because appellant was entitled to a jury trial as to the matters in Count II of his petition." Thus, plaintiff does not dispute here the propriety of the Court's action in dismissing Count I. We have, however, examined the evidence in detail, and find that there was no substantial evidence of an agreement by the deceased to make a will in plaintiff's favor. We need not review either that evidence or the authorities which require strict proof of such a cause of action. Collins et al. v. Harrell et al., 219 Mo. 279, 118 S.W. 432. The order and judgment of the Court dismissing Count I is affirmed. Since the case is being remanded, however, the judgment thereon should be held in abeyance pending the final conclusion of the whole case.

In the answer, defendants denied all of plaintiff's substantive allegations, some generally and some specifically; they alleged a "blood relationship" between plaintiff and deceased and also alleged that he was furnished or given more than the value of his services; they denied that there was any contract or agreement to pay him; and affirmatively pleaded a release in writing, made for a valuable consideration, attaching a copy to the answer. We note that the plea of a "blood relationship" was not an effective plea of the existence of a "family relationship" as defined and described in our cases. Plaintiff filed no reply. Defendants requested a separate hearing on the issue of the release, but none was granted. Plaintiff filed, prior to the trial, a motion for a jury trial, calling attention to defendants' plea of a release, to Supreme Court Rule 69.01, V.A.M.R., and also to fact issues concerning: (1) any agreement to make a will; and (2) whether, generally, plaintiff was entitled to be compensated for services performed. That motion was overruled several weeks before the trial. This question has caused us much concern and we are constrained to say that we have been required to research and decide it without any substantial assistance from the briefs; this has also been true of other substantive questions.

■ We need cite no authority to support the proposition that plaintiff was not entitled to a jury on Count I, unless the Court chose, in its discretion, to call an advisory jury. It did not do so, and that concludes that question. (We shall hereafter drop the Roman numerals used by plaintiff.) Count 2 was an action for a money judgment involving factual issues, and plaintiff would normally have been entitled to a jury trial. Mo.Const.Art. I, § 22(a), V.A.M.S.; § 510.190 RSMo 1959, V.A.M.S.[1] We have no indication of the reason why the trial court denied the motion; we assume that it was because the first count sounded in equity. It has often

1. All statutory references will be to this revision.

been said that if equity jurisdiction attaches "full and complete adjustment of the rights of all parties will be properly made in the suit." 27 Am.Jur.2d, Equity, § 19, p. 541; Davis v. Forrestal, 124 Minn. 10, 144 N.W. 423, L.R.A. 1915F, 1012; Smith v. Hendricks, Mo.App., 136 S.W.2d 449. In Goldman v. Ashbrook, Mo.App., 262 S.W.2d 165, this principle was construed to mean that a plaintiff must establish his equitable cause of action both by pleadings and evidence before the Court may, in equity, proceed to consider and grant relief which would otherwise be legal; or, in other words, that the equity jurisdiction must first attach both under the pleadings and the proof. In Pomeroy's Equity Jurisprudence, Fifth Ed., Vol. 1, § 237d. it is stated: "The doctrine that equity, having once become possessed of a cause, will retain it for the purpose of administering full and complete relief, does not apply when the facts relied on to sustain the equity jurisdiction fail of establishment." There sundry cases are cited. In Wimer v. Wagner, 323 Mo. 1156, 20 S.W.2d 650, 79 A.L.R. 1231, a suit for the specific performance of a contract to sell real estate, the Court said at loc. cit. 654, of 20 S.W.2d: "It is the general rule that equity, having once become possessed of a cause, will retain it for the purpose of administering full and complete relief; but that principle ordinarily does not apply when the facts relied on to sustain the equity jurisdiction fail of establishment."

See also 19 L.R.A.,N.S., 1065, annotation, where the general rule is stated as follows: "Although a few cases are found which can be characterized only as variants from the general rule, the preponderance of opinion in relation to the subject under consideration clearly seems to be that where a case for relief in equity fails, a court of equity is without jurisdiction to award other relief by way of disposing of the entire controversy; unless, indeed, it appears that the remedy at law will be inadequate. Otherwise, as the courts have frequently pointed out, a litigant, by a pretended claim for equitable relief, might deprive his opponent of advantages incident to an action at law." In Miller v. St. Louis & K. C. Ry. Co., 162 Mo. 424, 63 S.W. 85, the Court said in part, loc. cit. 87: "Appellant contends that its answer converted the whole case into a suit in equity, and that the court erred in submitting any of the issues to a jury. In support of that contention appellant refers to the familiar principle that, where a court of equity has jurisdiction of a case for any purpose, it will not leave it to be sent unfinished to another court, but will dispose of all the issues, even if some of them be such as, if standing alone, are triable only in a court of law. * * * But there must exist in the facts of the case some equity upon which it exercises it peculiar jurisdiction in part relief. If, when it comes to consider the case, there is found no equity in it, and no equitable relief therefor is granted, a court of equity will not retain the case to try the purely legal issues that may be in it."

The Court here found no equity in Count 1 and dismissed it. Count 2 was purely an action at law; the prayer that a money judgment be "decreed to be a lien" was nothing but surplusage. There is no ground whatever for declaring a lien on property in a simple money claim for services. The Court lost its equity jurisdiction and should have then granted plaintiff's request for a jury trial on Count 2 (or it might have sustained the motion conditionally in the first instance). This, of course, will require a new trial of the issues on Count 2. The Court was correct in dismissing Count 2 as to all individual defendants, for there was not even a pretense that services had been rendered to them or of any agreement by any of them.

In this situation we reach the question,— did plaintiff's evidence on Count 2 fail *as a matter of law* to make a case submissible to a jury? If so, we could reasonably hold that he was not prejudiced by the trial to the Court. On this we must consider two aspects: (1) Was a family relationship established as a *matter of law*, so that there would be a presumption that the services

were rendered gratuitously and, if so, was there submissible evidence to rebut such a presumption? And (2), was an effective release established as a matter of law, thus voiding all claims? We consider these separately.

▅▅▅ Among our relatively recent cases on the question of a family relationship are: Embry v. Martz' Estate, Mo., 377 S.W.2d 367; Smith v. Estate of Sypret, Mo., 421 S.W.2d 9; Allmon v. Allmon, Mo.App., 314 S.W.2d 457; Winschel v. Glastetter, Mo.App., 393 S.W.2d 71; In re Estate of Fox, Mo.App., 368 S.W.2d 909; Steva v. Steva, Mo., 332 S.W.2d 924; Muench v. South Side Nat. Bank, Mo., 251 S.W.2d 1; Ridinger v. Harbert, Mo.App., 409 S.W.2d 764, and McDaniel v. McDaniel, Banc, Mo., 305 S.W.2d 461. These cases recognize the principle that where a family relationship is established, there is a presumption that the services were rendered gratuitously, even though the claimant "entertained hope" of a payment (Sypret, supra), and that consequently he must show an agreement or understanding for payment; but also, that such a showing need not necessarily be made by direct evidence of a specific contract (Winschel, McDaniel, Allmon, supra). In McDaniel, supra, it was said, 305 S.W.2d at loc. cit. 464: "In overcoming the presumption, a claimant must prove either by direct evidence or by evidence from which it may be reasonably inferred that there was an agreement or mutual understanding the claimant was to be remunerated for the services rendered. While mere expressions of gratitude or intended generosity on the part of the recipient are not alone sufficient, a promise to pay may be implied from any facts or circumstances which in their nature reasonably justify the inference of an actual contract of hire or an actual understanding between the parties to that effect." The adjudicated cases also recognize that where no family relationship exists, the law presumes an intent to pay for the services. Sypret, Steva, supra. Also in Steva v. Steva, at 332 S.W. 2d loc. cit. 926, the Court said: "The term

'family,' within the rule under discussion, 'has been defined as a collective body of persons under one head and one domestic government, who have reciprocal, natural, or moral duties to support and care for each other.'" Another slightly different definition appears in Embry, supra. The defense of a family relationship is an affirmative defense and should be pleaded; and the defendant has the burden of proving it. Sypret, supra; Muench v. South Side Nat. Bank, Mo., 251 S.W.2d 1.

▅▅▅ In the ordinary case both the existence of a family relationship and (if there be one), whether there was an agreement to pay or an understanding that the services would be paid for, are questions of fact. In nearly all of the cases such questions have been submitted to the jury. In McDaniel, supra, a family relationship was conceded; in Allmon v. Allmon, Mo. App., 314 S.W.2d 457, the Court seems to have assumed a family relationship between father and son. In Steva and Muench, supra, it was held that the relationships of sister-in-law and grandniece, respectively, were not in themselves sufficient to create the relationship.

▅▅▅ We have determined here that, upon retrial, if the evidence is substantially the same as in this record, the issue of family relationship should be submitted to the jury; also, the existence or nonexistence of an intent or agreement (direct or indirect) to pay for the services, with the burden of proof fixed so as to depend upon the existence or nonexistence of a family relationship. The mere fact that plaintiff was a second cousin of Mrs. Reeves was not sufficient to create a family relationship. It is true that he lived in her household for many years, treated her most kindly and was, in turn, treated kindly by her; his necessities were furnished. The actual family was divided into five parts, with all daughters living separately and the husband staying in St. Louis most of the time except for a period during Mrs. Reeves' later life. It is even somewhat difficult to

say here whether Mrs. Reeves or her husband was the "head" of the family and of the "domestic government." There may also be some question as to the existence of any "reciprocal, natural or moral duties" of support and care. We do not mean, by these suggestions, to hold or intimate that there were not strong circumstances indicating a family relationship. The trial court obviously thought that such a relationship existed. We hold that the issue, on this evidence, was one of fact, and that upon retrial it should be submitted to the jury if the evidence is similar.

The evidence showed that Mrs. Reeves, over the years, made many statements concerning plaintiff to different people. Some of these indicated: a desire that plaintiff be paid for his services; that plaintiff should make a claim against her estate; a desire that plaintiff have "the whole place"; a fear that "they would beat Joe out of everything"; also other statements of similar import. We express no opinion as to whether these would constitute evidence "from which a jury may reasonably find that the claimant and deceased mutually understood the services rendered and received were not voluntary but were for remuneration." McDaniel v. McDaniel, Banc, Mo., 305 S.W.2d 461, 466.

We now consider the question of the release. The document was offered and received over plaintiff's objection that no foundation was laid and that the notary had not been produced. One of the daughters testified positively that she saw plaintiff sign the document in the office of a notary in St. Louis and in the presence of her son, two of her sisters, the notary and another person. This constituted a sufficient identification and the document was admissible. Plaintiff's claim of error on the admission of the release is denied. The "notarization" on this release constitutes neither an acknowledgment nor an affidavit; it is a peculiar thing, stating merely "signature notarized by" etc., but a release need not be sworn to or acknowledged. Mrs. Rawl, the daughter, also testified that the release was read to plaintiff by the notary, and that the "rest of us" also read it out loud. The release is rather crudely prepared, but it does express an agreement that plaintiff does "withdraw" his suit (already filed) and that the specifically acknowledged consideration of $400 should "constitute a final and complete settlement of all present or future claims." The instrument was, on its face, sufficient to constitute a release. It was fully pleaded in the answer of the defendants and, as stated, plaintiff filed no reply.

For some unexplained reason defendants' counsel did not ask plaintiff whether he signed the release, although plaintiff testified concerning some of the surrounding circumstances. Where the execution of a release purporting to rest upon consideration is admitted the claimant has the burden of proving the release to be invalid. Conley v. Fuhrman, Mo., 355 S.W.2d 861; Bogus v. Birenbaum, Mo., 375 S.W.2d 156. We must decide first whether plaintiff legally admitted the execution of this release, although the necessity of so doing seems rather foolish under these circumstances. If he did not, the credibility of the defendants' testimony was for the jury. Plaintiff admitted that Mrs. Rawl's son came to his place of residence and asked him to go to St. Louis "and sign these papers over"; that he replied, "All right, but I don't know whether I am able to make it or not"; that he went to St. Louis the next morning (Saturday) and returned the next day. Plaintiff's counsel referred at one point to the circumstances "surrounding the signing of this purported release," and at another point to the "purported execution of the purported release." There was no denial by plaintiff of the execution nor was there any express admission. While any ordinary person would consider this evidence as strongly indicating the execution of the release by plaintiff, we have concluded that we may not hold that this was established by *his* testimony as a matter of law. Consequently, we may not affirm on the ground that plaintiff conceded the execution of a release which, as

a matter of law, he did not invalidate or avoid by his evidence. Had this question been properly triable to the Court, we would have no hesitancy in deciding that plaintiff did execute the release.

The evidence of the plaintiff here fell short of any showing of fraud, duress, lack of consideration, mistake or any other recognized ground for invalidating a release. If, upon a retrial, plaintiff intends to make any such defense to the release he should file a reply and plead the defense. Rule 55.01 (§ 509.010) does not expressly require a reply except to "a counterclaim denominated as such," and it provides that the Court may order a reply. Rule 55.10 (§ 509.090) provides, however, that a party *shall* plead affirmatively sundry matters constituting affirmative defenses to a preceding pleading. Rule 55.11 (§ 509.100) provides that averments in a pleading to which a responsive pleading is not filed and is not required "shall be taken as *denied or avoided*," but it would seem most unrealistic to require a defendant who had pleaded a release to anticipate and meet an *"avoidance"* when he had not been advised in any way of the reason for or the grounds of the avoidance. Rule 55.08 (§ 509.070) permits a claimant to state in a reply his grounds for setting aside a release as fraudulent or "otherwise wrongfully procured."

In Frank v. Wabash R.R. Co., Mo., 295 S.W.2d 16, the defendant pleaded in its answer an ordinance of the City of St. Louis; plaintiff filed no reply. At the trial and on appeal plaintiff maintained that the ordinance was invalid as contrary to state law. The Court held that plaintiff might not avail himself of that contention, it not having been timely raised. While the case is not precisely in point here, we note that the Court said in part, loc. cit. 21: "No reply was filed in this case and none was required in order to have the pleadings at issue, but a reply was permissible. In addition, if it was the position of plaintiff that the ordinance was invalid, and therefore could not properly constitute a

matter of defense, a motion to strike the pleadings pertaining to the ordinance was available to defendants." As stated, our question is not quite the same, but the ruling is somewhat analogous. In Hillhouse v. City of Aurora, Mo.App., 316 S.W.2d 883, it was held that new matter alleged in an answer was deemed denied without a reply. We agree. The difficulty arises where the plaintiff seeks to allege an affirmative avoidance, not merely to deny.

In reviewing our Code of Civil Procedure in 1951, Professor Carl C. Wheaton, 16 Mo. Law Review 426, 430, indicated that any affirmative defense to new matter pleaded in an answer should be set up in a reply. He based this largely upon § 509.090 requiring the affirmative pleading of any matter of avoidance or affirmative defense, to a preceding pleading. He concludes that §§ 509.010 and 509.090 should be read together. He does not discuss § 509.100 which confuses the situation somewhat. That author cites Hill v. Hill, Mo.App., 236 S.W.2d 394, where the Court said at loc. cit. 398: "[1] Whatever limitations applied to the office of the reply under the old code, the present Code of Civil Procedure must be applied to the instant case. Section 40 of the present code, R.S.1949, § 509.090, authorizes and requires a reply to affirmatively set up fraud and other matters constituting avoidance or affirmative defense to matters set up in the answer. Carr, Missouri Civil Procedure, Vol. 1, p. 371. In our opinion plaintiff here had the right to plead in her reply the fraud, if any, in the procurement of the previous divorce decree pleaded in defendant's answer."

In Carr on Missouri Civil Procedure, Vol. 1, pp. 371, 372, in the discussion following what is now § 509.090, the author says: "Section 32 of the Code only *requires* a reply when an 'answer contains a counterclaim denominated as such'. This section 40, however, expressly provides that 'in pleading to a *preceding* pleading' (which can be an answer) avoidances and affirmative defenses 'shall' be set forth. A re-

quired reply thus appears to be called for as provided by this section regardless of whether an answer contains a counterclaim and a reply is not limited to answering a counterclaim. Until the Supreme Court of Missouri has clearly decided the scope of required replies the language of Code § 40 should be strictly followed."

Perhaps one or more of our rules should be amended, but in the meantime and in order to clarify this rather confusing situation we hold now that a reply should be filed when a plaintiff desires to avoid or affirmatively attack new and affirmative matter alleged in the answer. In that reply he should distinctly allege his grounds of avoidance. In the absence of such a reply the new matter is merely considered as denied; here, for instance, the execution of the release. We are not penalizing this plaintiff because of the present state of his pleadings. If, however, plaintiff has any grounds for avoiding the pleaded release he should plead them in a reply following the remand. In our opinion his evidence, as produced, showed no such grounds, and we have refrained from an affirmance on the basis of the release solely because there was no concession of its execution.

In view of a retrial we must note plaintiff's objections to several groups of checks which were introduced. Those dated after the death of Mrs. Reeves are irrelevant. As to those drawn by her or against her account before her death, there should be specific identifications of those particular checks which defendant wishes to use and which might be relevant, and also some competent testimony as to the purpose of each such check. Plaintiff should not be penalized by generalizations in evidence concerning groups of checks which might or might not constitute payments to or for him. If specifically identified, checks issued in payment for outside farm labor or household work prior to January 22, 1965, would be admissible, though perhaps of little value. We are cited to no case holding that miscellaneous personal checks come within the purview of our Business Records Act, § 490.660–490.690, RSMo 1959, V.A.M.S., but we do not exclude that possibility as to some of these checks. However, if that course is to be pursued there must be a more realistic effort to comply with § 490.680.

We affirm the judgment of dismissal of Count 1, but that order should be held in abeyance pending the full disposition of the cause. Count 2 has been dismissed by the Court as to the individual defendants; that order was proper and the retrial should be had only against the Administratrix. The judgment and decree on Count 2 is reversed and the cause remanded for further proceedings in accordance with this opinion.

All of the Judges concur.